UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
**CASE NO. 20-CIV-21964-CMA**

SECURITIES AND EXCHANGE : 
COMMISSION, :
 :
Plaintiff, :
 :
v. :
 :
TCA FUND MANAGEMENT :
GROUP, CORP.; and TCA :
GLOBAL CREDIT FUND, LTD., :
 :
Defendants, and :
 :
TCA GLOBAL CREDIT FUND, LP;:
TCA GLOBAL CREDIT FUND, :
LTD.; TCA GLOBAL CREDIT :
MASTER FUND, LP, :
 :
Defendants. :

**WHISTLEBLOWER'S MOTION AND INCORPORATED
MEMORANDUM OF LAW SEEKING CLARIFICATION ON SCOPE OF
BLANKET STAY AND RELIEF FROM THE SAME**

COMES NOW Whistleblower Thomas Day (hereinafter "Day"), by and

through undersigned counsel, and, in compliance with Rule 7.1 of the Local Rules

of the United States District Court in and for the Southern District of Florida, files

this, his Motion for Relief from Blanket Stay with Incorporated Memorandum of

Law, seeking leave to file the attached lawsuit against TCA Fund Management

WHISTLEBLOWER'S MOTION TO LIFT STAY
CASE NO. 20-CIV-21964-CMA

Group Corp, TCA Global Credit Fund, Ltd., Robert Press, Alyce Schreiber and William Fickling (Exhibit 1).

## I.      **Factual Background**

A.          Day's Employment with Defendant.

Thomas Day ("Day") was hired as TCA's Chief Credit Officer ("CCO") in January 2018, was member of TCA's executive leadership, and, in the scope of his professional duties, had access to information concerning TCA's risk related policies and procedures, loan underwriting, portfolio administration, loan closings, cash disbursements, debt consolidation, working capital, loan portfolios, and ongoing transaction management.

B. TCA's Structure and Governance.

TCA was the acting investment manager of the TCA Global Credit Master Fund ("GCMF" or "the Fund").  TCA also managed and operated other funds which include, but may not be limited to: TCA Global Credit Fund GP, Ltd. (the general partner fund); TCA Global Credit Fund, LP (an onshore feeder fund); TCA Global Credit Fund, Ltd. (an offshore feeder fund, "GCF"); TCA Global Lending, Corp. (a US tax blocking entity); the Special Situations Credit Strategies ICAV (a fund registered in Ireland, or the "ICAV"); the TCA Opportunities Fund I, LP ("OPPS"); and the TCA Tamwheel UK LP ("TMWL") (collectively, "the Funds").

2

WHISTLEBLOWER'S MOTION TO LIFT STAY
CASE NO. 20-CIV-21964-CMA

Robert Press ("Press") was the General Partner, Founder, and President of TCA and handled the flow of cash between the Funds and TCA and personnel decisions.

Alyce Schreiber ("Schreiber") was the acting CEO of TCA and, along with Press, handled the flow of cash between the Funds and TCA and personnel decisions. Schreiber appears to retain her position as TCA's CEO.

William Fickling ("Fickling") was TCA's former head of corporate restructuring, was TCA's acting Chief Operating Officer (COO), and along with Press and Schreiber, handled the flow of cash between the Funds and TCA and personnel decisions.

C. After Discovering TCA's Fraud, Day Attempted to Escalate Issues Internally and Report TCA to the Plaintiff.

Upon information and belief, the Securities and Exchange Commission ("SEC") conducted an examination of TCA covering the period 2014 through 2015 resulting in a findings memo signed by SEC Assistant Regional Director Jeannie Cabot. This memo was issued to TCA on March 3, 2016 and uncovered, among other things, accounting irregularities composed primarily of recording deals prior to loan closing to inflate TCA's assets under management.

Despite prior SEC scrutiny, beginning with his tenure at TCA, Day began to uncover what he reasonably believed was a new fraudulent scheme by TCA,

WHISTLEBLOWER'S MOTION TO LIFT STAY
CASE NO. 20-CIV-21964-CMA

orchestrated by and through its directors and officers (including, but not limited to, Press, Schreiber, and Fickling) to circumvent SEC detection while continuing to inflate TCA's assets under management and offset losses.[1]  Day repeatedly raised questions with TCA's officers, including Press, Schreiber, and Fickling about these practices, but was ignored, falsely assured these practices would cease, warned to not bring these issues up, or verbally abused.

On December 24, 2019, Day submitted information on the SEC's Tips, Complaints, and Referrals ("the TCR") system regarding TCA.  On January 7, 2020, Day sent an email notifying TCA, its directors, officers, and other upper management personnel that he had filed the TCR after prior attempts to escalate his concerns within TCA failed.

D.    After Learning Day Engaged in Protected Speech, TCA Immediately Retaliated Against Him.

A few hours after Day notified TCA about the TCR, TCA withdrew Day's email and network access.  On February 5, 2020, the undersigned counsel informed TCA's counsel (Carl Schoeppl) that this constituted retaliation under the Dodd-Frank Act, 15 U.S.C. § 78u-6(h).  On February 28, 2020, TCA terminated Day, claiming that TCA was winding down GCMF.

---

[1]  TCA's scheme and Day' internal response thereto is detailed in the SEC's original complaint in this action and in Day's complaint which is attached hereto as Exhibit 1.

4

WHISTLEBLOWER'S MOTION TO LIFT STAY
CASE NO. 20-CIV-21964-CMA

Since his termination, Day has been unable to gain full employment.  Until the SEC filed its complaint, he was unaware of the status of the SEC's investigation and was concerned that if he candidly disclosed the reasons for his departure from TCA to prospective employers it might compromise the SEC's investigation.   Day believes that this has frustrated his efforts to seek new employment because prospective employers have questions about their departure from TCA that they cannot completely answer.   Indeed, prior to the SEC's complaint, Day was mistakenly named as a defendant in a class action investor lawsuit against TCA and has been notified by prospective employers that they cannot consider him for employment because of the same when, in reality, he prompted the SEC investigation.

E.     TCA Officers Remain Employed After the Fund Winds Down and TCA
Enters Receivership.

Despite TCA's claims that it terminated Day because it was winding down the Fund, at least 10 people remained employed by TCA when the SEC filed its complaint over two months later.  Along with five other employees, the Receiver retained Schreiber as TCA's CEO.  [Doc. 48 at 20].  Schreiber, along with another employee, was involved in processing Day' attempts to access his TCA-sponsored 401k retirement accounts.  It appears that Schreiber maintained significant control over TCA's operations even after the SEC sued TCA for investor fraud perpetrated

WHISTLEBLOWER'S MOTION TO LIFT STAY
CASE NO. 20-CIV-21964-CMA

under her leadership. Although the Receiver has since dismissed Schreiber, it has entered consulting agreements with three employees who were responsible for TCA's financial and administrative operations, including its controller and treasurer. [Doc. 48 at 21, 25-26].

## II.    Procedural Background

A.    The SEC Files a Complaint and Consent Motion to Appoint the Receiver.

The SEC filed the underlying lawsuit on May 11, 2020. [Doc. 1]. On that same day, the SEC and TCA (by and through Carl Schoeppl) filed an unopposed expedited motion for the appointment of the Receiver. [Doc. 3]. The Court granted the motion the same day. Neither of Plaintiffs herein were consulted or notified of the motion in advance.

B.    The Court Enters the Order Appointing the Receiver and Staying Litigation.

The Order Appointing the Receiver ("the Order"), among other things, stayed

> All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in Receiver's capacity as Receiver; (b) any Receivership Property, wherever located; (c) any of the Receivership Entities, including subsidiaries and partnerships; or, (d) any of the Receivership Entities' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party

6

WHISTLEBLOWER'S MOTION TO LIFT STAY
CASE NO. 20-CIV-21964-CMA

defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

[Doc. 5 at ¶ 26].  It also stayed

All Ancillary Proceedings  . . . in their entirety, and all courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court.   Further, as to a cause of action accrued or accruing in favor of one or more of the Receivership Entities against a third person or party, any applicable statute of limitation is tolled during the period in which this   injunction   against   commencement   of   legal proceedings is in effect as to that cause of action.

[*Id.* at ¶ 28].  Lastly, it dismissed TCA's "trustee, directors, officers, managers, employees, investment advisors, accountants, attorneys and other agents" and suspended their powers.  [*Id.* at ¶ 5].

C.    The Court Lifts Stay for a Creditor Seeking Injunctive Relief.

On June 9 2020, Lease Corporation of America ("LCA") filed a motion to lift the stay so that it could recover certain equipment leased to Broward Collision, Inc., which it was entitled to under a lease agreement upon which Broward had defaulted.  [Doc. 35 as ¶¶ 1, 5].  The Court granted this motion because LCA was not seeking "property that could legitimately be liquidated for the benefit of all creditors."  [Doc. 38].

D.    Day Cooperates with the SEC and Receiver.

Since the outset of the TCR, Day has, at all times, endeavored to aid the

WHISTLEBLOWER'S MOTION TO LIFT STAY
CASE NO. 20-CIV-21964-CMA

SEC and Receiver in the exercise of their duties.  In addition to filing the initial

TCR to alert the SEC to TCA's attempts to avoid detection, Day provided the SEC

with interviews and documents supportive of the TCR and the SEC's lawsuit

against TCA.

When, to protect himself and investors, Day informed TCA of the TCR,

TCA attempted to interview him.  To ensure that he did not disclose confidential

aspects of the SEC's investigation, Day declined.  Day, again cognizant of

potentially compromising the SEC's ongoing investigation, declined to file suit

until the SEC completed its investigation or filed a complaint.

However, when the SEC ultimately filed a complaint simultaneously with

the motion appointing the receiver, Day found that the Court's Order precluded

him from asserting his claims against TCA, its directors, and officers.

Nevertheless, after the Court appointed the Receiver, Day cooperated fully with the

Receiver's investigation.  To date, Day provided interviews and documents to the

Receiver and directed it to other witnesses who may be helpful in recovering

TCA's assets. [Doc. 48 at 25-26].

In addition, Day has, pursuant to S.D. Fla. L.R 7.1, sought both the Receiver

and the SEC's consent to lift the stay so that he may assert the claims outlined in

Exhibit 1.  The SEC and Receiver have declined, citing their duties to investors.

WHISTLEBLOWER'S MOTION TO LIFT STAY
CASE NO. 20-CIV-21964-CMA

## II.     __Argument and Citation to Authority__

A.     <u>The Court Should Toll the Statute of Limitations for Day's Claims.</u>

Day requests that the Court order that TCA toll the statute of limitations for

any actions that may accrue against TCA while the stay is in place.   Without

permission from this Court to timely pursue his claims, Day will be irreparably

prejudiced because the Order may completely bar his claims.   *See S.E.C. v.*

*Provident Royalties, L.L.C.*, No. 3:09-CV-1238-L, 2011 WL 2678840, at *3 (N.D.

Tex. July 7, 2011) (holding that, in evaluating whether to lift a stay, a court must

balance the preservation of the status quo against substantial injury to moving

party) (citations omitted).   However, tolling the statutes of limitations for Day's

actions against TCA and its affiliates would not prejudice TCA or other interested

parties because it serves purposes analogous to the Order imposing the stay.   [Doc.

5 at ¶ 28 (tolling statute of limitations for actions brought by TCA against other

entities)].

B.     <u>Day's Claims Do Not Involve Property that May be Liquidated for the
Benefit of All Creditors.</u>

To Day's knowledge, TCA has not submitted his complaint to its insurer to

9

confirm if his claims are an insured event.  If Day's claims, like many employment claims, are an insured event, then the Court should lift the stay because, like LCA, Day's claims would not involve "property that could legitimately be liquidated for the benefit of all creditors."  [Doc. 38].  If, on the other hand, Day's claims are an uninsured event, an unequivocal statement from TCA's insurer that his claims are not covered would allow this Court and all interested parties to more fully assess TCA's potential liabilities.  Therefore, at the very least, the stay should be lifted so that Day's claims can be submitted to TCA for limited discovery concerning insurance coverage and a definitive determination concerning the same.

C.  <u>Day Requests Injunctive Relief that May Preserve TCA's Assets.</u>

Day's complaint is not limited to monetary relief.  He also requests equitable relief in the form of reinstatement.   Should he be reinstated, his claims for monetary damages—in the form of back pay, front pay, and attorneys' fees—would substantially decrease, to the benefit of TCA and the Receiver.  Although TCA claims Day was terminated because it was winding down, it is clear that, officers and employees who, in some cases, are directly implicated in TCA's fraud remained employed for several months after Day's termination.  [Docs. 48 at 11-12, 19-21; 48-2].

It is also clear that the Receiver has retained professionals, including former

WHISTLEBLOWER'S MOTION TO LIFT STAY
CASE NO. 20-CIV-21964-CMA

TCA employees, to assist in administering the Receivership. [Docs. 9, 11, 13-14,
21, 31-34, 41-42]. At the time of writing, the Receiver has been unable to
complete the liquidation plan by the original August 7, 2020 due date and sought a
90-day extension, which the Court granted. [Docs. 43-44]. The Receiver
acknowledges that it "remains in its very early stages . . . will continue to manage
the Receivership's operating businesses, and determine a strategy to maximize
their value . . . the same is true of the other receivership assets including the loan
portfolio." [Doc. 48 at 80].

     Given, the Receiver's reliance on TCA's officers and retained professionals
and need for deadline extensions, it is clear that a successful liquidation of TCA
will require professionals who are intimately familiar with its internal processes,
the fraud underlying the SEC's complaint and who have potential knowledge and
forensic skills to assist in locating assets which may be hidden to  evade SEC
enforcement. Day—as TCA's former chief credit—is, perhaps more than most,
uniquely positioned to do this. More importantly, employing him will mitigate the
damages Day may have if and when the stay is lifted. It will also ensure that TCA
has full access to Day and his institutional knowledge, which we believe is
necessary to protect and preserve TCA's assets in the most efficient and
expeditious manner. Therefore, the equitable relief Day seeks, in the form of

WHISTLEBLOWER'S MOTION TO LIFT STAY
CASE NO. 20-CIV-21964-CMA

remunerative employment, may assist the Receiver in its mission by identifying

and preserving the Receivership assets for investors.

D.     The Factors Favor Lifting the Stay as to Day.

While this Court has discretion to stay litigation in federal courts,

> [w]hen determining whether a stay against litigation
> should be lifted, the Court considers: (1) whether
> refusing to lift the stay genuinely preserves the status quo
> or whether the moving party will suffer substantial injury
> if not permitted to proceed; (2) the time in the course of
> the receivership at which the motion for relief from the
> stay is made; and (3) the merit of the moving party's
> underlying claim.

*S.E.C. v. Onix Capital, LLC*, No. 16-24678-CIV, 2017 WL 6728814, at *3 (S.D.

Fla. July 24, 2017) (citing *S.E.C. v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984);

*S.E.C. v. Byers*, 592 F. Supp. 2d 532, 536-37 (S.D.N.Y. 2008), aff'd, 609 F.3d 87

(2d Cir. 2010); *U.S. v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 445 (3d Cir. 2005);

S.*E.C. v. Stanford Int'l Bank, Ltd.*, 424 Fed.Appx. 338, 341-42 (5th Cir. 2011)).

Here, the context of the case, the stay's indeterminate duration, the potential

substantial prejudice Day will experience if the stay continues, and the chilling

affect that maintaining the stay will have on prospective SEC whistleblowers favor

lifting the stay.

The first factor weighs in favor of lifting the stay.  As discussed previously,

the stay is currently of an indeterminate duration which has already, and may

WHISTLEBLOWER'S MOTION TO LIFT STAY
CASE NO. 20-CIV-21964-CMA

continue to, preclude Day from making any claims against TCA, its officers, directors, or other affiliates. However, it is not clear that lifting the stay would alter the status quo. As previously discussed, there is no indication that Day's claims would affect property that the Receiver can liquidate, which is the purported rationale for imposing the stay. Therefore, continuing the stay presents substantial and possibly irreparable prejudice to the movants, whereas lifting it causes no apparent disruption to the status quo.

Under the second factor, little time has elapsed since the imposition of the stay, which does not weigh in the movants' favor. However, the third factor—the relative merits of the movant's claims—weighs in their favor. Day seeks to bring claims for retaliation under SOX, which requires a showing

> that "(i) the employee engaged in a protected activity or conduct; (ii) the [employer] knew or suspected, actually or constructively, that the employee engaged in the protected activity; (iii) the employee suffered an unfavorable personnel action; and (iv) the circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the unfavorable action."

*Thomas v. Tyco Int'l Mgmt. Co., LLC*, 416 F. Supp. 3d 1340, 1357 (S.D. Fla. 2019) (quoting *Johnson v. Stein Mart, Inc.*, 440 F.App'x 795, 800-1 (11th Cir. 2011)). The complaint also contains whistleblower retaliation claims under the Dodd-Frank Act, 15 U.S.C. § 78u-6, which requires that: he (1) engaged in

protected activity; (2) suffered a materially adverse employment action; and (3) the adverse action was causally connected to the protected activity." *Id.* at 1367 (quoting *Hall v. Teva Pharmaceutical USA, Inc.*, 214 F. Supp. 3d 1281, 1289 (S.D. Fla. 2016)).   In addition, he brings claims under Florida's Whistleblower Act, Fla. Stat. 448.102(3) ("FWA"), which is analyzed using Title VII retaliation claim framework. *See Rutledge v. SunTrust Bank*, 262 Fed. Appx. 956, 957-58 (11th Cir. 2008).  Under the FWA, a whistleblower must show that he (1) engaged in a statutorily protected activity by objecting to or refusing to participate in any employer activity, policy or practice that was in actual violation of an adopted law, rule or regulation; (2) he has suffered an adverse employment action; and (3) the adverse employment action was causally linked to the statutorily protected activity. *See Bell v. Ga.-Pac. Corp.*, 390 F. Supp. 2d 1182, 118788 (M.D. Fla. 2005).

Here, provided he is permitted to administratively exhaust his SOX claims, Day can establish a prima facie case of retaliation under SOX, Dodd-Frank, or the FWA.  First, he engaged in protected activity by informing TCA's officers about his concerns about fraudulent reporting of assets and returns, filing the TCR, and informing TCA of the same.  Second, as evidenced by the SEC's decision to file the underlying claims against TCA, Day's belief that TCA was violating the law

WHISTLEBLOWER'S MOTION TO LIFT STAY
CASE NO. 20-CIV-21964-CMA

was reasonable.  Third, Day suffered adverse action because TCA locked him out of work immediately after learning of his protected activity and, a month later, terminated him.  Fourth, the fact that other TCA employees—including those junior to Day and without the necessary expertise to assist TCA in winding down the Fund—remained employed raises an inference that his termination was causally related to their protected activity.

Lastly, the balance of the equities and the public interest favor lifting the stay as to Day.  Day has already suffered substantially at the hands of TCA and its officers and directors due to his efforts to protect investors and prevent the fraud underlying this lawsuit.  Indeed, were it not for Day's willingness to notify the SEC of TCA's fraud, it is doubtful that the SEC would have uncovered it, prosecuted it, and the investors would have been in any position to recover anything.  As a result of Day's actions, he was denied his bonuses and other compensation due to him, locked out of work, harassed and threatened by TCA and its employees, and terminated.  Even so, Day continued to preserve the confidentiality of the SEC's investigation and refrained from filing a lawsuit that might compromise the investigation underlying their retaliation claims.  Day has not secured new employment and, now, the Court's Order precludes him from even bringing claims against TCA for retaliating against him for filing the very

15

WHISTLEBLOWER'S MOTION TO LIFT STAY
CASE NO. 20-CIV-21964-CMA

TCR that resulted in the underlying action.

If this is what whistleblowers can expect when they bring fraud to the SEC's attention, it will undoubtedly chill future whistleblower activity. This is especially so in today's post-Covid socioeconomic climate, where job openings are few, fraud may be particularly rampant, and the ability of government entities to directly interact with the institutions it regulates may be limited. Indeed, the SEC recently acknowledged as much, noting that "in these dynamic circumstances, corporate insiders are regularly learning new material nonpublic information that may hold an even greater value than under normal circumstances." Statement from SEC Dir. Enforcement Stephanie Avakian, Steven Peikin, https://www.sec.gov/news/public-statement/statement-enforcement-co-directors-market-integrity (Mar. 23, 2020). By making it difficult for Day to preserve his claims, let alone pursue them, the Court sends a message that would-be whistleblowers have no legal recourse should their protected speech result in retaliation, in effect, abrogating Dodd-Frank.

## III.   **Conclusion**

For the foregoing reasons, Day requests that the Court lift the blanket stay as it applies to his whistleblower claims. In the alternative, Day requests that the Court order TCA and its officers, directors, and all other parties covered by the stay to toll the statute of limitations for Day's claims and permit Day to file his

WHISTLEBLOWER'S MOTION TO LIFT STAY
CASE NO. 20-CIV-21964-CMA

complaint and conduct discovery for the limited purpose of definitely determining

if their claims are an insured event under TCA's applicable policies.

## Certificate of Conferral

Lead counsel for Plaintiff previously contacted counsel for Defendants, who indicated

that Defendants oppose the relief sought in this Motion.

Respectfully submitted this ____28th____ day of February 2022.

BUCKLEY BEAL, LLP

*s/ Edward D. Buckley*
 Edward D. Buckley
*Pro Hac Vice Pending*
Georgia Bar No. 092750
edbuckley@buckleybeal.com
600 Peachtree Street NE,  Suite 3900
Atlanta, Georgia  30308
Telephone:  (404) 781-1100
Facsimile:  (404) 781-1101

HESS LAW FIRM

*s/ Ephraim R. Hess*
Ephraim Roy Hess
Florida Bar No. 983100
erh@thehessfirm.com
erhpalaw@gmail.com
205 Davie Boulevard
Fort Lauderdale, Florida 33315
Telephone: (954) 585-8599
*Attorneys for Plaintiff*

WHISTLEBLOWER'S MOTION TO LIFT STAY
CASE NO. 20-CIV-21964-CMA

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on FEBRUARY  28th , 2022, a copy of the foregoing

was served via CM/ECF Notification and/or U.S. Mail to all parties and notification of

such filing to all CM/ECF participants in this case.

s/ *Ephraim R. Hess*
Ephraim Roy Hess, Esquire

18