**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 20-CIV-21964-CMA**

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

v.

TCA FUND MANAGEMENT GROUP CORP.,
*et al.*,

      Defendants.

_____/

**<u>RECEIVER'S EIGHTH QUARTERLY STATUS REPORT</u>**

Jonathan E. Perlman, Esq.
Florida Bar No. 773328
jperlman@gjb-law.com
*Receiver for the Receivership Entities*

-and-

GENOVESE JOBLOVE & BATTISTA, P.A.
100 Southeast 2nd Street, 44th Floor
Miami, FL 33131
Tel: (305) 349-2300
Gregory M. Garno, Esq.
Florida Bar No. 87505
ggarno@gjb-law.com
Elizabeth G. McIntosh. Esq.
Florida Bar No. 1011555
emcintosh@gjb-law.com
*Attorneys for Jonathan E. Perlman, Esq.,*
*Receiver for the Receivership Entities*

## TABLE OF CONTENTS

EXECUTIVE SUMMARY ............................................................................. 1

THE RECEIVER'S EIGHTH QUARTERLY STATUS REPORT ..................................... 3

I.       BACKGROUND ....................................................................................... 3

II.     RELATED FUNDS .................................................................................. 4

III.    ACTIONS TAKEN BY THE RECEIVER DURING THIS REPORTING PERIOD 4

    A.   The Receivership Bank Accounts ............................................................. 4

    B.   Business Operations .............................................................................. 4

    C.   Accounting and Forensic Work ................................................................ 5

    D.   Receivership Entities' Tax Returns ........................................................... 5

    E.   Receivership Entities' Technology Progress .............................................. 6

    F.   Communications with Third Parties .......................................................... 6

    G.   Website/Ongoing Communications ........................................................... 7

    H.   Investor Interviews .............................................................................. 7

    I.    Receivership Entities' Records ................................................................ 7

    J.   Investigation of Third Party Litigation Claims ............................................ 7

    K.   Investigation of Investor, Subscriber and Redemption Claims, and Preparation of
Interim Claims and Distribution Plan ............................................................... 8

    L.   Net Winners Actions ............................................................................. 9

IV.    CHAPTER 15 PROCEEDINGS ................................................................... 10

V.     CAYMAN ISLANDS .............................................................................. 10

VI.    RECEIVERSHIP ESTATE ASSETS ........................................................... 11

    A.   Cash Assets ....................................................................................... 11

    B.   Special Purpose Vehicles ...................................................................... 11

        1.   SPV – Domestic ........................................................................ 11

        2.   SPV – International ..................................................................... 12

        3.   SPV – Real Property and Other Assets .......................................... 13

    C.   Loan Portfolio .................................................................................... 14

        1.   Sale of the Loan Portfolio ............................................................ 14

        2.   Continuing Overview of the Loan Portfolio ...................................... 14

    D.   TCA Aerospace ................................................................................. 16

    E.   Third Party Litigation Initiated by the Receiver .......................................... 17

    F.   Litigation Initiated by the Master Fund Against Borrowers ............................ 17

VII.   THE RECEIVER'S OBSERVATIONS ........................................................ 27

VIII.  CONTINUING WORK .......................................................................... 28

CASE NO. 20-CIV-21964-CMA

# EXECUTIVE SUMMARY

1.  On May 11, 2020, this Court appointed Jonathan E. Perlman, Esq. as Receiver over Defendants and Relief Defendants TCA Fund Management Group Corp., TCA Global Credit Master Fund, LP, TCA Global Credit Fund GP, Ltd., TCA Global Credit Fund LP, and TCA Global Credit Fund, Ltd. *See* [ECF No. 5]. On May 18, 2020, the Court expanded the Receivership to include TCA Global Lending Corp., which served as a "tax blocker" for the TCA Global Credit Fund, Ltd. feeder fund investors. *See* [ECF No. 16].

2.  At the time of the Receiver's appointment, the Receivership Entities' combined U.S. bank accounts had a total balance of $308,267. The Receivership Entities' bank accounts at Axos Bank currently have a combined balance of $67,783,732. Income and expenses are reflected in Exhibit "A" attached hereto.

3.  The Receiver previously engaged B. Riley Advisory Services ("B. Riley") to facilitate the sale of the Receivership's loan portfolio. During this Eighth Reporting Period, B. Riley and the Receiver completed the first round of bidding, picked finalists, and are negotiating highest and best final offers. The Receiver expects to complete the sale of the loan portfolio during the next reporting period.

4.  During this Eighth Reporting Period, the Receiver also settled one of his fraudulent transfer lawsuits for $200,000. The Receiver issued additional demand letters to third parties seeking to claw back fraudulent transfers, and entered into tolling agreements with potential defendants in certain cases where the transfer recipients have agreed to discuss settlement. The Receiver also obtained Court approval to pursue claims for transfers to net winner investors and issued demand letters to significant net winners. The Receiver and his professionals also continued to investigate and prepare additional lawsuits seeking recoveries for the ultimate benefit of stakeholders.

5.  As promised in the last report, during this period the Receiver filed his Motion for Approval of Distribution Plan and First Interim Distribution [ECF No. 208], and the Court set April 29, 2022 as the deadline for stakeholders to file or submit objections or comments to the proposed Distribution Plan. [ECF No. 215]. Seven stakeholders filed objections to the proposed Distribution Plan with the Court. During this reporting period, the Receiver spent a great deal of time responding to investor inquiries regarding their claims, investigating such claims and resolving them where possible. The Receiver and his team also began analyzing objections and comments, and preparing his reply in support of the Motion for Approval of Distribution Plan and First Interim Distribution that is due in June.

6.  During this Eighth Reporting Period, the Receiver also successfully concluded settlement negotiations with EdisonLearning. EdisonLearning agreed to pay the Receiver $5.4 million by June 30, 2022, and the Court approved the settlement. [ECF Nos. 250, 251]. If payment is not received, the Receiver will pursue his rights to a larger judgment.

7.  During this reporting period, the Receiver also successfully resolved litigation in New Zealand regarding competing ownership claims to JLE Holdings, LTD, a New Zealand

CASE NO. 20-CIV-21964-CMA

company in the electrical contracting business. As a result of the court-approved settlement, the Receiver is in a position to maximize the value of this receivership asset.

8.     The Receiver also attended mediation in order to resolve his claims upon the Receivership's $5 million director and officer insurance policy and the Receiver's claims against certain directors and officers. The mediation remains ongoing. If the matter cannot be resolved, the Receiver may have no choice but to file lawsuits against the appropriate parties.

### THE RECEIVER'S EIGHTH QUARTERLY STATUS REPORT

Jonathan E. Perlman, as court-appointed Receiver (the "Receiver") over the Receivership Defendants TCA Fund Management Group Corp. ("FMGC") and TCA Global Credit Fund GP, Ltd. ("GP") (FMGC and GP are hereinafter referred to collectively as "Defendants") and Relief Defendants TCA Global Credit Fund, LP ("Feeder Fund LP"), TCA Global Credit Fund, Ltd. ("Feeder Fund Ltd.," and with Feeder Fund LP, "Feeder Funds"), TCA Global Credit Master Fund, LP (the "Master Fund") (Master Fund, together with Feeder Funds, are the "Funds"), and TCA Global Lending Corp. ("Global Lending") (Defendants, the Funds, and Global Lending are hereinafter referred to collectively as the "Receivership Entities"), by and through undersigned counsel and pursuant to this Court's order appointing the Receiver [ECF No. 5], respectfully submits his Eighth Quarterly Status Report (the "Report").

## I.     BACKGROUND

The Receiver filed his First Quarterly Status Report on August 4, 2020 (the "First Report") and his Second Quarterly Status Report (the "Second Report") on November 5, 2020. *See* [ECF Nos. 48, 70]. The First and Second Reports provide background information on the events leading up to the appointment of the Receiver and provide a detailed explanation of the Receivership Entities and the Receiver's professionals.[1] The Report covers the period of February 9, 2022 to the date of this filing (the "Eighth Reporting Period").[2] The Report contains assessments and

---

[1] All capitalized terms will have the same meaning as defined in the Receiver's First Report and First Interim Omnibus Application for Allowance and Payment of Professional Fees and Reimbursement of Expenses for May 11, 2020 through June 30, 2020. [ECF No. 48, 55]. *See also*, the Receiver's Third Quarterly Status Report ("Third Report") filed February 3, 2021 [ECF No. 108].

[2] The Eighth Interim Omnibus Application for Allowance and Payment of Professional Fees and Reimbursement of Expenses for January 1, 2022 through March 31, 2022 covers a slightly different timeframe than the Eighth Reporting Period.

observations, which are subject to change as the Receiver and his professionals continue to conduct their investigation and review the affairs of the Receivership Entities and related parties.

## II.    RELATED FUNDS

As discussed in prior reports, two affiliated investment funds with overlapping management and employees, TCA Opportunities Fund, I-A, LP ("TCA Opportunities Fund") and the TCA Special Situations Credit Strategies ICAV (an Irish Collective Asset Vehicle incorporated in Ireland) ("TCA ICAV"), marketed themselves as operating under the "TCA Capital" umbrella.

During the Eighth Reporting Period, the Receiver continued to engage with the TCA ICAV Joint Official Liquidators regarding the $1.2 million claim the Receiver submitted in the TCA ICAV voluntary liquidation pending in Ireland, and interrelated loans and transactions. With regard to a significant promissory note owed by TCA Opportunities Fund, the Receiver attempted to realize a recovery as part of a mediation that took place during this Reporting Period. The mediation was not successful, and the Receiver believes he will have no choice but to pursue legal remedies.

## III.    ACTIONS TAKEN BY THE RECEIVER DURING THIS REPORTING PERIOD

### A.    The Receivership Bank Accounts

The Receiver continues to maintain six Receivership bank accounts at Axos Bank. As of the filing of this Report, the Receivership accounts have a total balance of $67,783,732. A schedule of the Receiver's receipts and disbursements is attached hereto as Exhibit "A."

### B.    Business Operations

DSI continued to provide financial advisory services to aid in overseeing operations and maximizing the value of the Special Purpose Vehicles ("SPVs"), and other Receivership assets, including in particular with regard to JLE Holdings, Transmarine, and Cleland. During the Eighth

Reporting Period, the Receiver and his counsel negotiated a reduction in the services and amount charged for those services with Tierpoint (a cloud based storage system for electronic files of the Receivership Entities) for a net benefit to the Receivership Estate.

### C.    Accounting and Forensic Work

Since filing the Receiver's Motion for Approval of Distribution Plan and First Interim Distribution [ECF No. 208] (the "Distribution Plan") on February 28, 2022, the Receiver received over 350 inquiries from individual investors and/or investor nominees regarding the Distribution Plan. During this Eighth Reporting Period, the Receiver's counsel provided Yip Associates with updated call/email logs containing the investor inquiries. Yip Associates analyzed the investor inquiries, including emails and any additional records provided, reconciled discrepancies between the Distribution Plan and the inquires, and assisted the Receiver's counsel in preparing responses to these investor inquiries. Clarification based on investor inquiries resulted in various updates to the distribution analysis.

In addition, Yip Associates continued to prepare litigation damages analyses at the request of Receiver's counsel. This included a tracing analysis to identify the sources of funds used to pay redemptions during the period of January 2018 through May 2020 and prepared demonstrative flow charts.

### D.    Receivership Entities' Tax Returns

During this Eighth Reporting Period, Rehmann, the Receiver's tax consultant, prepared and filed extensions for the 2021 federal income tax returns for each of the Receivership Entities. Rehmann also began preparation of the work papers and the draft amended income tax return for the 2018 tax year for TCA Global Credit Master Fund, LP. Further, Rehmann began preparation of work papers required to prepare the amended income tax returns for the 2019 tax year for TCA

Global Credit Master Fund, LP.

Rehmann also continued to gather information needed to prepare the necessary income tax filings, prepared various tax forms, reviewed outstanding tax issues, coordinated tax compliance matters for the Receivership Estate. Rehmann continued to handle tax issues that arose pre-receivership, tax issues relating to certain SPVs and asset dispositions, and execution of various IRS forms on behalf of the Receivership Entities.

### E.    Receivership Entities' Technology Progress

The Receiver continued to receive documents, which are uploaded and maintained by E-Hounds on a secure searchable database.

### F.    Communications with Third Parties

During the Eighth Reporting Period, the Receiver served additional persons and entities with the Court's appointment order, document requests, and demands for turnover of information.

The Receiver communicated with 375 investors or investor representatives regarding his proposed Distribution Plan. In connection with these communications, the Receiver received and reviewed information investors provided to address questions and concerns. The Receiver then made case-by-case decisions related such concern. The Receiver's current deadline for filing his reply in support of his Motion for Approval of Distribution Plan and First Interim Distribution is June 6, 2022. *See* [ECF No. 249].

During this Reporting Period, the Receiver also filed a motion with the Court seeking approval of a process to make demand and pursue claims against "net winner" investors which also established settlement parameters. [ECF No. 225]. Following the Court's granting of the motion [ECF No. 226], the Receiver sent out an initial tranche of over 60 demand letters to significant net winner investors.

CASE NO. 20-CIV-21964-CMA

### G.      Website/Ongoing Communications

The Receiver continued to maintain the toll-free Receivership "Hotline" at 833-984-1101 and 305-913-6731, and an email address for general inquiries: receiver@tcafundreceivership.com. The Receiver also regularly updated the Receivership website www.tcafundreceivership.com to provide new information for investors and interested parties. This Report will be posted on the Receivership website. The Receiver also plans to send the Report to investors for whom the Receiver has e-mail addresses.

### H.      Investor Interviews

The Receiver and his team, as discussed above, continued to communicate with investors and investment advisors (many of whom represent multiple investors). The Receiver also continues to maintain a repository of documents and information provided by investors.

### I.      Receivership Entities' Records

The Receivership Entities' records contain millions of pages of documents relating to: (1) assets, (2) operations, (3) personnel files, (4) marketing, and (5) compliance with industry norms and regulations. The Receiver and his professionals continued to review the Receivership Entities' corporate business records. The Receiver and his team also continue to review data and information from various sources in response to document requests and subpoenas.

### J.      Investigation of Third Party Litigation Claims

During the Eighth Reporting Period, the Receiver and his professionals continued to investigate significant potential claims against numerous third party claims, as well as numerous fraudulent transfer claims. A number of fraudulent transfer claims that are being handled by GJB on a contingency basis have been filed. During this Eighth Reporting Period, GJB executed a settlement agreement in one case in the amount of $200,000 and received payment in full. GJB

continues to investigate and analyze all potential fraudulent transfer claims and other potential sources of recovery available to the Receiver.

The Receiver also continued to discuss resolving pre-suit claims the Receivership may have against former management of the Receivership Entities. In September 2021, Robert Press entered into a settlement with the SEC with respect to the SEC's claims against him. Under this settlement, amongst other things, Press is required to pay to the Receiver $5,457,294 over 18 months. On September 30, 2021, the Receiver received the first installment of $1,364,326. On April 8, 2022, the Receiver received an installment payment of $500,000. The SEC settlement does not resolve all of the Receiver's claims against Press.

As discussed in the last Report, the Receiver made a timely demand on certain insurance coverage totaling $5,000,000 maintained by the Receivership Entities and scheduled a mediation in an attempt to resolve pre-suit both the coverage claims, and the Receiver's claims against certain directors and officers. During the Eighth Reporting Period, the Receiver attended the mediation, as well as a second mediation which occurred after the respondents produced preliminary financial information. The mediation remains ongoing. If the matter cannot be resolved, the Receiver may have no choice but to file a lawsuit against the appropriate parties.

**K.  Investigation of Investor, Subscriber and Redemption Claims, and Preparation of Interim Claims and Distribution Plan**

On March 8, 2021, the Receiver filed a Motion to Compel Financial Institutions to Disclose the Investment Details of Beneficial Owners. [ECF No. 118]. During the Eighth Reporting Period, the Receiver and his professionals continued to finalize a comprehensive data collection and analysis project from information received from financial institutions, nominees, custodian account managers, financial advisors, and/or the beneficial owners directly disclosing the ultimate beneficial owners and their investment transaction history. GJB and the Receiver communicated

with nominees, beneficial owners, and financial institutions in attempts to secure their compliance with the Court's orders and capture the data necessary to complete the analysis the Receiver will use in his formulation of a liquidation and distribution plan. As a result of GJB and the Receiver's efforts, the initial investor pool grew from approximately 430 investors to over 1400 investors. On February 28, 2022, the Receiver filed his Motion for Approval of Distribution Plan and First Interim Distribution. [ECF No. 208]. Of the over 1400 investors and stakeholders, only fifteen filed objections or submitted any negative comment to the Receiver about the proposed Distribution Plan. The Receiver will address those objections and comments as part of his Reply Brief in support of his Motion for Approval of Distribution Plan and First Interim Distribution due in June.

### L.    Net Winners Actions

The Receiver's investigation revealed that some investors did not receive any funds back on account of their investments, some investors received a portion of the funds they invested, and other investors received more back than they invested. For the investors receiving more back than they invested (the "Net Winners"), the Receiver calculated those total "profits" to be more than $70 million. The Receiver contends that any "profits" received in excess of the amount invested are transfers made to the investors that are avoidable and recoverable for the benefit of all investors (the "Net Winnings Claims"). Accordingly, on April 8, 2022, the Receiver filed a Motion for Leave of Court to Pursue Avoidance Actions and Approval of Proposed Procedures [ECF No. 225] (the "Procedures Motion"), which sought approval to pursue collection of the Net Winnings Claims from the Net Winners and to fix procedures for the litigation and settlement process to streamline the process. The Court granted the Procedures Motion. [ECF No. 226].

The court-approved procedures to pursue the Net Winnings Claims are as follows: (a) the Receiver will send demand letters to the Net Winners who received more than $10,000 in Net

Winnings; (b) the Receiver will include a proposed settlement agreement; (c) at the Receiver's business discretion, and after conferral with the SEC, the Receiver may consider and/or offer discounts based upon a Hardship Discount or Reasonably Sustainable Defenses. *See* [ECF No. 225].

During the Eighth Reporting Period, the Receiver sent 60 demand letters to Net Winners. The Receiver's efforts to gather the necessary information and pursue collections for each of the Net Winners, as approved by the Court, is ongoing.

## IV.    CHAPTER 15 PROCEEDINGS

By stipulated order, this Court withdrew its reference of this Chapter 15 Case from the U.S. Bankruptcy Court for this District and directed that all further filings be made in this Receivership Case. During the Eighth Reporting Period, the Receiver continued to express willingness to the Cayman Islands-recognized joint liquidators for Feeder Fund Ltd. ("JOLs") to discuss ways in which they might work together to increase amounts available for distribution to stakeholders, including potentially working together on foreign litigation and/or arbitration matters on a contingency basis. To date, no such cooperative proposal has been received. However, on April 29, 2022, the JOLs filed objections to the Receiver's proposed Distribution Plan and asked this Court to instead implement a distribution scheme in contravention of U.S. federal law that would likely pay nothing to investors, but would pay over $1 million to the JOLs who the Receiver believes have not provided any tangible benefit to the Receivership Estate. [ECF Nos. 236, 240, 241].

## V.    CAYMAN ISLANDS

During this Eighth Reporting Period, Collas Crill continued to provide the Receiver with advice and assistance regarding ongoing foreign law, regulatory and tax matters in the Cayman

Islands.

## VI.     RECEIVERSHIP ESTATE ASSETS

### A.     Cash Assets

In accordance with the Receivership Order, the Receiver and GJB continued to investigate financial accounts associated with the Receivership Entities and advise of the asset freeze ordered by the Court. To date, the Receiver has recovered $74,078,705 for the Receivership Estate.

The Receiver also maintains one additional BB&T account in the name of TCA Fund Management Group Corp. This account is a general lockbox to receive funds deposited from various loan portfolio clients and is maintained in case additional funds are received from portfolio clients, even though the Receiver and his Retained Professionals have directed loan portfolio clients to begin making payments to the Receivership accounts at Axos Bank. The TCA Fund Management Group Corp. account at BB&T has a balance of $308,267.

### B.     Special Purpose Vehicles

The Receivership's assets include businesses that the Master Fund owns (typically as 100% member/manager) through SPVs. The Master Fund typically began its relationship with these businesses by providing secured debt financings. When the borrower failed to meet its obligations, the Master Fund sued and ultimately executed an Article 9 UCC foreclosure sale of the borrower's assets to a newly formed operating entity owned by the Master Fund.

Below is a summary of the current SPVs and their status, broken down into investment categories:

### 1.     SPV – Domestic[3]

**Pivot Energy aka TCA Microgrid, LLC.** The sale of TCA Microgrid assets concluded

---

[3] For a detailed analysis of each asset and its position within the portfolio, please *see* Section 6.B of the First Report.

during the Fifth Reporting Period, as set forth in the Fifth Quarterly Status Report. [ECF No. 163 at p. 6]. The sale of TCA Microgrid netted the Receivership Estate almost $52 million. The Receiver continued to address post-closing tax issues relating to TCA Microgrid during the Eighth Reporting Period.

**Transmarine.** During the Eighth Reporting Period, Transmarine continued to operate on a positive basis without the need for capital infusion. However, the Receiver and his consultant Mark Iammartino at DSI have had to spend more time assisting with operational issues during this Eighth Reporting Period. The Receiver also continued to consider strategic options.

The Receiver and his professionals also continued to work with Transmarine and the tax attorneys it retained to resolve a tax liability claim asserted by the IRS. As explained in the Fifth Quarterly Status Report, Transmarine's counsel has requested an administrative hearing to dispute the IRS claim. Unfortunately, because the IRS has still not scheduled the hearing, the Receiver has been unable to conduct a sales process. The Receiver will continue to work on a sales process to maximize value and will execute on such plan as soon as the IRS claim is resolved, but will also explore potential options regarding the sale of the company subject to the IRS claim.

### 2.     SPV – International

**Cleland Ltd.** As discussed previously, the Receiver's professionals in Scotland successfully obtained a limited defense against money laundering application from the UK National Crime Agency, a necessary step towards full re-registration of the legal entity and the real estate it owns. Scotland counsel also formally commenced proceedings to complete the registration. During the Eighth Reporting Period, the Receiver completed an environmental assessment to validate no issues are present that would inhibit the sale of the property. The Receiver and his advisors are now finalizing the registration of the company and discussing a

potential sales process with an interested party, which may include hiring a broker.

**JLE Holdings, LTD/Zeecol Finance LLC**. SPV Zeecol Finance LLC is the record owner of JLE Holdings, LTD, a New Zealand company in the electrical contracting business in New Zealand. As discussed previously, a prior owner of JLE asserted a significant ownership interest in JLE and Zeecol and filed a lawsuit in New Zealand seeking legal determination and enforcement of such purported ownership interest. JLE previously obtained, with the Receiver's approval, an independent valuation of the business for approximately $4.2 to $5.3 million USD.

During this Eighth Reporting Period, at the conclusion of two lengthy mediations, the Receiver and other parties to the litigation executed settlement term sheets, and then a definitive settlement agreement, which the Receiver submitted to this Court for approval, and the court subsequently approved. [ECF. Nos. 218, 227]. Since then, the prior owner of JLE's option rights to acquire the Receivership Estate's loan and equity interests in JLE have expired. As a result, and consistent with the settlement agreement, JLE will now undergo a market sales process overseen by the Receiver and professionals.

### 3.    SPV – Real Property and Other Assets

**Galveston, Texas Real Property (owned through SPV TCA Acquisitions III, LLC).** This "Property" consisted of three separate non-contiguous tracts totaling 2,134 acres in Galveston County, Texas, primarily wetlands accessible only by airboat. As discussed in the Receiver's Sixth Report, the Receiver successfully closed on the sale of the parcels for $2,524,000, an amount equal to the highest of five disinterested and independent appraised values commissioned by the parties, on November 15, 2021, a few days prior to the beginning of the Seventh Reporting Period. [ECF No. 190 at pp. 14-15]. During the Eighth Reporting Period, the Receiver and his professionals attended to related administrative tax responsibilities.

**Lexington, North Carolina Real Property.** TCA Share Holdings, LLC (f/k/a TCA MCA, LLC (NV)), is the titleholder of certain real property located at 419 Salem Street, Lexington, North Carolina. The Master Fund is the 100% equity owner of TCA Shareholdings, LLC. During this Period, the Receiver dealt with local compliance issues and performed maintenance on the property. The Receiver will seek approval of the selling broker momentarily.

### C.    Loan Portfolio

#### 1.    Sale of the Loan Portfolio

The Receiver engaged B. Riley to facilitate the sale of the loan portfolio. B. Riley prepared marketing materials and sent solicitations to its extensive network of financial professionals and potential purchasers to participate in the sales process. These parties included investors, hedge funds, and private equity firms.

During this Reporting Period, prospective purchasers continued to conduct due diligence on the loan portfolio and submitted bids. The Receiver selected final bidders and B. Riley is in the process of negotiating the highest, best offer and a backup offer. The loan portfolio sale is expected to be concluded during the Ninth Reporting Period.

#### 2.    Continuing Overview of the Loan Portfolio

As explained in previous reports, the Fund prospectuses, annual financial audits, and monthly and other reports suggest that one of the Receivership's most substantial and valuable assets are performing loans. As explained in prior reports, however, the Receiver and his professionals discovered that there were only two performing loans, and two others that were paying regularly, but far less than the monthly amount due under their loan agreements.

Given the upcoming sale of almost all of the loan portfolio, this Report only discusses loans for which there has been some notable activity or status to report during the Eighth Reporting

CASE NO. 20-CIV-21964-CMA

Period.

**Amian Angels (f/k/a Oncologix)**

| | |
|---|---|
| Loan Origination: | January 2014 |
| Loan Principal: | $127,211 |
| Loan Interest: | $1,640 |
| Last Payment: | March 2022 |
| Remaining Balance: | $128,850 |
| Status: | Communicating and Making Payments |

Amian Angels made its monthly payments of $8,030.53 during this Reporting Period.

**Pacific Ventures**

| | |
|---|---|
| Loan Origination: | June 2017 |
| Loan Principal: | $2,399,966 |
| Loan Interest: | $821,088 |
| Total Balance: | $3,221,054 |
| Last Payment: | March 18, 2022 |
| Status: | Communicating and Making Partial Payments |

Prior to the Receiver's appointment, the Defendants permitted PACV to pay only $10,000 (not the required $75,000) per month, to avoid a default so PACV could attempt to complete a capital raise. During the Eighth Reporting Period, the Receiver received two $10,000 payments and PACV continued its efforts to complete a capital or debt raise to pay off the purchase debt for both San Diego Farmers' Market and Seaport Meat. This loan is included as part of the loan portfolio being sold.

**CD International Enterprises, Inc.**

| | |
|---|---|
| Loan Origination: | March 2014 |
| Last Known Balance: | $760,458.51 |

In about March 2014, Receivership Entity Master Fund made a series of loans to CD International Enterprises, Inc. totaling $2,000,000. In connection with the loan, Yue Jian Wang ("Mr. Wang"), the borrower's principal, executed a guaranty and a security agreement to Master Fund with an "Assignment of Life Insurance Policy as Collateral" which assigned a certain life insurance policy Mr. Wang had with Guardian Life Insurance Company of America ("Guardian")

15

to Master Fund (the "Policy"). After Mr. Wang refused to consent to turnover, the Receiver moved to compel turnover [ECF No. 188], which the Court granted. [ECF No.189]. On or about November 22, 2021, during the Seventh Reporting Period, the Receiver received the Policy proceeds of $233,818.01. The remainder of the loan obligation is part of the loan portfolio being sold.

### D.    TCA Aerospace

TCA Aerospace is a former SPV of Master Fund that was sold to affiliated entity TCA Opportunities Fund in 2019. TCA Opportunities Fund was managed and operated by the same management and employees that managed and operated TCA Receivership Entities, including Press, Schreiber, and Fickling. The 2019 transaction documents provided that Master Fund was selling TCA Aerospace to the Opportunities Fund for $2 million in cash plus a promissory note in the face amount of $8.5 million, of which only $5 million would be secured (by TCA Aerospace assets), plus an annual right to 50% profit share payments should a stated threshold be exceeded. On March 13, 2020, at a time when management was engaged in negotiations for entry of the consent judgment and agreed appointment of a receiver, management nonetheless executed a restated replacement note, apparently for no consideration that among other things eliminated TCA Opportunities Fund's obligation to make monthly interest payments on the $8.5 million promissory note, and instead provided that no payments would be due (to the Receiver) for three full years.

In October 2020, DSI visited TCA Aerospace and met with TCA Aerospace management to better understand the operations and business models for each of the TCA Aerospace operating companies. The Receiver requested and received some financial information from these operating companies in the Fourth Reporting Period, but the information was determined to be very stale and lacking in the detail required. After TCA Aerospace and its subsidiaries, Maney, and V&M

refused to provide current financial information regarding the entities to which the Receiver was entitled to under the Receivership Order and as creditor, the Receiver issued subpoenas, to which the subpoena recipients objected on grounds of relevance. The Receiver filed a motion to compel against Precision Aerospace, which was granted. *See* [ECF Nos. 168, 169].

Precision Aerospace Group (f/k/a TCA Aerospace) ultimately provided updated financial statements on a monthly basis for year-to-date through September 2021. DSI provided its preliminary analysis of current results to the Receiver. The Receiver and GJB analyzed the updated financial statements. Thereafter, the Receiver demanded TCA Opportunities Fund to permit inspection of all books and records at its expense, as authorized by the security agreement.

As discussed elsewhere, during this Reporting Period, the Receiver was unsuccessful in resolving this debt obligation during a mediation. The Receiver continues to determine the best course of action to collect on the debt obligation-fraudulent transfer.

### E.    Third Party Litigation Initiated by the Receiver

During the Eighth Reporting Period, the Receiver and GJB continued its investigation into multiple third party transferees to evaluate the most effective way to recover via claw back and avoidance litigation. GJB negotiated an extension of the tolling agreement with one target to allow additional time to investigate and negotiate the potential claims with the transferees. Previously, the Receiver filed an avoidance and recovery of fraudulent transfer complaint against American Express. During this Eighth Reporting Period, the case was settled, and the Receiver was paid in full under the settlement agreement.

### F.    Litigation Initiated by the Master Fund Against Borrowers

The Receiver and his counsel, GJB, continued to monitor and prosecute pending litigation matters involving the Receivership Entities, with a goal toward reaching a favorable resolution or

17

to final judgment.

Given the upcoming sale of almost all of the loan portfolio, this Report only discusses those litigation matters for which there has been some notable activity or status to report during the Eighth Reporting Period.

- ***TCA Global Credit Master Fund v. Montbriar, Inc., Paycation Travel, Inc., at al.**, Broward County Circuit Court, Case No. CACE-16-019532*

- ***Paycation Travel, Inc., Xstream Travel, Inc., and David Manning, v. TCA Global Credit Master Fund, Montbriar, Inc., Jeremy Monte, et al.**, Collin County Court, Texas, Case No. 199-03524-2016*

The Master Fund brought suit against the borrower and the guarantors for breach of a secured credit facility agreement and replacement note, pursuant to which TCA loaned the borrower a total of $7.78 million. Two of the corporate guarantors and its principal, Paycation Travel, Xstream Travel, and David Manning, all located in Texas, filed a preemptive suit in Texas state court against the borrower and the Master Fund. The Florida court stayed the Florida proceeding pending conclusion of the Texas proceeding under the first-to-file rule. The Master Fund reached a settlement in the Florida action with the borrower and remaining guarantors, in exchange for cooperation and assistance in the Texas proceedings. The Florida court entered an order administratively closing the Florida proceeding. The case may be re-opened on motion by any party.

In the Texas proceeding, the guarantors pled claims against the borrower and the Master Fund for fraud and conspiracy in connection with the loans, among other claims. The Master Fund raised counterclaims in the Texas proceeding for breach of the credit facility agreement and notes, and for fraudulent transfer, tortious interference, and unjust enrichment. Based upon limited discovery, those claims include Manning's transfer of at least $2 million in funds from Paycation to another travel services company, Traverus, which continues to operate. During the pendency of

CASE NO. 20-CIV-21964-CMA

the proceeding, $1.4 million in receipts held by a third-party credit merchant vendor, World Pay U.S., Inc., was placed in escrow with the Texas court, pending determination of the Receiver's counterclaims to recover the loan proceeds. Both Manning and the Receiver claim entitlement to those funds, but it does provide an established source of recovery should the Receiver prevail.

The Receiver's counsel has approached Paycation's counsel to determine whether a settlement is possible. This loan and the associated foreclosure rights are included for sale as part of the loan portfolio.

- ***TCA Global Credit Master Fund, L.P. v. Medytox Solutions, Inc., Health Technology Solutions, Inc. f/k/a Medytox Information Technology, Inc., et al.*, Broward County Circuit Court, Case No. CACE-18-018385 (21)**

On August 1, 2018, the Master Fund filed suit seeking $2,029,748.20 in principal, fees and interest against a defaulted borrower and guarantors on loan agreements in connection with a senior secured redeemable debenture. The total loan amount was $3,000,000. The borrower was a Nevada integrated medical solutions provider operating out of Palm Beach, Florida. Guarantor/Defendant Rennova Health, Inc. owns several other related medical solutions companies.

Prior to the Receiver's appointment, the defaulting parties did not vigorously defend this lawsuit. The Master Fund's former counsel and counsel for the defendants agreed to put the litigation on hold to enter into informal settlement negotiations, which were never consummated. Since that time, Shutts & Bowen appeared as new counsel for the borrower and guarantors. During the Sixth Reporting Period, counsel for the Receiver successfully negotiated and settled this matter for $500,000 payable with an initial payment of $200,000, followed by six monthly payments of $50,000. As of May 1, 2022, all payments due under the settlement have been received, though some monies were received after the applicable due date.

CASE NO. 20-CIV-21964-CMA

- ***Intelligent Highway Solutions, Inc. v. TCA Global Credit Master Fund, L.P. v. Crescent Construction Company, Inc., Philip Kirkland, William D. Jones*, Broward County Circuit Court, Case No. CACE 18-000934 (02)**

On April 30, 2018, the defaulted borrower, Intelligent Solutions, an Elk Grove, California company that services and provides energy-saving technology for intelligent highway systems, filed a pre-emptive lawsuit against the Master Fund, *Intelligent Highway Solutions vs. TCA Global Credit Master Fund, L.P.*, 2017-00219822-CU-FR (Sac. Cty Sup. Ct., CA), asserting claims for unlicensed lending under California law among other claims. The borrower alleged that the Master Fund failed to provide advisory services (for which it agreed to pay $1.5 million) in connection with the loan funds it received ($631,855). The court dismissed the California action due to a forum selection clause in the loan agreements. The borrower filed an identical action in Florida.

The Master Fund moved to dismiss the borrower's claims, and filed counter and cross claims against the borrower, co-borrower and guarantors, seeking to recover for breach of the credit agreement, revolving note, and guarantees. After motion practice, the borrower abandoned its affirmative claims for relief, filed its answer, and borrower's counsel withdrew from the case. Borrowers have now obtained new counsel. During the Seventh Reporting Period, the parties agreed to reopen settlement discussions, which the parties initiated during this Eighth Reporting Period. This loan is included for sale as part of the loan portfolio.

- ***TCA Global Credit Master Fund, L.P. v. Independent Charter Academy Network, LLC, EdisonLearning, Inc., Edison Receivables Company LLC, Edison Schools, Inc., Edison Learning Limited, Bridgescape Learning, LLC, Provost Systems, Inc., Theodore Roosevelt College and Career Academy, Inc., Provost International, Inc., Learnnow, Inc., and Thomas M. Jackson*, Broward County Circuit Court, Case No. CACE 18-016887 (09)**

In January 2017, the Master Fund loaned $8.1 million to the borrower, EdisonLearning, Inc., an education services company that manages and operates public charter schools and provides online learning services in multiple states. The borrower and its principal, however, defaulted on

20

the loan and diverted funds otherwise available to the Master Fund in repayment, among other violations of the terms of the loan agreements. After the Master Fund brought suit to foreclose on the loan, on June 25, 2019, the parties executed a settlement agreement, by which the debtors agreed to market and sell the EdisonLearning E-Learning Business by June 25, 2020 for a minimum of $10.5 million, to be paid to the Master Fund to settle its remaining debts. The Receiver is entitled to file a consent judgment for that amount with the court.

During the Eighth Reporting Period, the Receiver successfully entered into an amendment of the settlement agreement with EdisonLearning, which the Court approved. [ECF Nos. 250, 251]. As set forth in the Receiver's Unopposed Motion to Approve Amendment to Settlement Agreement, EdisonLearning agrees to pay the Receiver the aggregate sum of five million four hundred thousand dollars ($5,400,000.00) (the "Settlement Amount") by June 30, 2022 to satisfy the payment obligations contained in the Settlement Agreement. The settlement described therein (and in the attached First Amendment) reflects the realities and limitations of EdisonLearning's operations, as well as a third parties' ability to monetize the company's operations and assets to repay EdisonLearning's debt obligation to Master Fund. In the event of a default under the First Amendment, the First Amendment shall be deemed void, and the Receiver may pursue all rights and remedies he is entitled to under the original settlement.

- ***TCA Global Credit Master Fund, L.P. v. American Gold Rush, LLC, Krystal Lazares-Scaretta, and Robert Scaretta***, **Broward County Circuit Court, Case No. CACE-17-021221**

On November 21, 2017, the Master Fund sued the borrower and guarantors for $1,073,439.95 plus fees and interest, due to the borrower's default on an original $800,000 secured debenture, later increased to $1,040,272.21 under an amended secured redeemable debenture. On February 12, 2019, the court entered summary judgment against the borrower and Ms. Lazares-

Scaretta. On April 12, 2019, the Master Fund secured a default judgment against Mr. Scaretta. The Master Fund retained local counsel to domesticate the judgments in New York, where the guarantors previously held property. The guarantors have evaded service for collection on the judgments, but the Receiver learned that the guarantors do not have any assets, with one exception, a claimed original Picasso painting provided by guarantor Robert Scaretta as collateral for the loan. A preliminary appraisal determined that the work is not by Picasso. Additionally, ownership of the painting is disputed. During this Eighth Reporting Period, Receiver's counsel was contacted by a broker for a potential buyer, who agreed to review the hi-resolution photographs and to further investigate, at the buyer's expense, whether there is value in the work. This loan and judgment, but not painting, are included for sale as part of the loan portfolio.

- ***TCA Global Credit Master Fund, L.P. v. Keith Eric Petron, RZNK, LLC, Tarps R Us, Inc., RZNK 2, LLC, Broward Collision Truck and Auto Repair Center, LLC,** Broward County Circuit Court, Case No. CACE 18-024831 (14)*

- ***TCA 4675 NW 103 Avenue Sunrise, LLC v. RZNK 2, LLC, et al.**, Case No. CACE-18-019377 (09)*

- ***Alliance Holdco, LLC v. TCA Broward Collision, LLC**, COSO 19-4553 (61), CACE 19-20581 (13), CACE 20-1309 (9)*

- ***Atlantic Southern Paving and Sealcoating, LLC v. TCA Broward Collision, LLC, et al.**, CACE 19-14792 (3)*

This series of related cases involves borrower Broward Collision, the recipient and obligor on two loans from the Master Fund in June and December 2017. Broward Collision eventually filed for bankruptcy on June 22, 2018 (*In Re Broward Collision, Inc.*, Case 18-17492-RBR (Bankr. S.D. Fla.)). The Master Fund filed a claim for $1.6 million pursuant to the loan transaction. The bankruptcy court approved the sale of Broward Collision to a Master Fund affiliate, TCA Broward Collision, LLC, for $332,985.50. TCA Broward Collision then purchased leases for two auto body shops located on properties in Sunrise and Lauderdale Lakes, Florida. The owner brought eviction

22

actions against TCA Broward Collision. Atlantic Southern Paving and Lease Corp. also brought actions against tenant Broward Collision on a construction lien for paving services and to repossess auto-body paint equipment. The Receiver turned over the premises to the landlord in connection with the shuttering of the business.

The Broward County court entered an order staying the state court proceedings as to TCA Broward Collision on December 16, 2020. During this Eighth Reporting Period, Receiver's counsel continued to monitor this proceeding.

In the *TCA 4675 NW 103 Avenue Sunrise, LLC v. RZNK 2, LLC, et al.* matter, counsel for the Plaintiff was successful in reopening this proceeding, but the Defendant has filed a Notice of Appeal of the underlying February 2020 Order of Foreclosure. Receiver's counsel continued to monitor this proceeding during the Eighth Reporting Period.

- *TCA Global Credit Master Fund, L.P. v. Groupe Mercator Transport US, Inc., 8894132 Canada, Inc., 8895791 Canada, Inc., d/b/a Utc Air Ground, and Jean-Pierre Apelian*, **Broward County Circuit Court, Case No. CACE-19-000406 (14)**

On January 4, 2019, the Master Fund filed a complaint against the borrower and guarantors, based on their defaults on a loan under a series of transactions. The Master Fund arranged to provide financing to Groupe Mercator, a Canadian freight-forwarding firm, to pay off Mercator's lenders. In connection with that transaction, the Master Fund allegedly arranged for another Fund borrower, David Fuselier, to operate the Groupe Mercator business through two new companies in Canada. The loan amount was $2.6 million; the current loan payoff, with interest, is $3.1 million. Receiver's counsel has learned that Groupe Mercator Transport is an active company, with annual sales of $5.78 million.

On March 4, 2019, the defendant guarantors filed counterclaims against the Master Fund and against former Chief Portfolio Manager, Donna M. Silverman. Defendants assert that Ms.

Silverman committed fraud in presenting Fuselier as trustworthy, when she knew otherwise. Defendants also claimed that the Master Fund charged an excessive rate of interest in violation of the Nevada High Interest Lending Statute.[4] However, the Master Fund alleged that Fuselier diverted funds owed to it, and directed Robert Gagnon, manager of the new companies, 8894132 Canada, Inc. and 8895791 Canada, Inc. (the "Numbered Entities"), to withhold financial reporting, and not to deposit revenues into the lockbox as required in the loan agreements. Fuselier and Gagnon then allegedly moved all the assets of the Canadian Numbered Entities, which were essentially formed to collect and hold Mercator's receivables to another company, ATL Canada, Inc., which is now conducting the same business. The Master Fund sued Fuselier separately, but he declared bankruptcy and the debt was discharged. Neither the borrower nor the guarantors ever repaid either loan.

The court set the case for trial on the September 2021 trial docket. The parties engaged in mediation and in non-binding arbitration as the court ordered. On August 16, 2021, the arbitrator entered an award in favor of the Receiver and against all defendants. On September 14, 2021, the court granted the Receiver's Motion for Entry of Judgment to Confirm Arbitration Award Against Defendant Groupe Mercator, and entered judgment against Groupe Mercator for $4,399,475.57. On September 10, 2021, the court also granted the Receiver's motion for summary judgment as to liability against the guarantors.

A trial on damages took place on September 13, 2021. In October, the court entered a judgment in the amount of $1,500,000 against Apelian and in the amount of $4,392,640.24 against the remaining guarantor entities, jointly and severally. The Receiver plans to seek to recover its attorneys' fees and will initiate efforts to collect on the judgment, including by domesticating the

---

[4] The controlling loan documents require the application of Nevada law.

judgment in Canada and seeking to enforce it there.

On November 18, 2021, the guarantors filed a notice of appeal of the final judgment. The appeal without bond does not, however, preclude execution on the judgment. Accordingly, the Receiver initiated steps to domesticate and collect upon the judgment in Canada, as well as to collect upon the judgment in the United States. Specifically, the Receiver served written discovery in aid of execution upon the defendants, and served defendants' Florida counsel with subpoenas to obtain documents reflecting payments made by defendants' to their counsel for legal services. The Receiver also served defendants' counsel with writs of garnishment in an effort to obtain any funds being held by defendants' counsel. In response to the Receiver's receipt of one of the answers to a writ of garnishment, the Receiver has demanded a trial to determine whether defendants' counsel is holding funds.

During the Seventh Reporting Period, the Receiver also obtained an order granting its motion for attorneys' fees as a result of defendants' filing of a bad faith affidavit in opposition to the Receiver's Motion for Summary Judgment. An evidentiary hearing is being scheduled at which the Court will determine the amount of fees to be awarded to the Receiver.

During the Eighth Reporting Period, defendants filed their initial appellate brief arguing that the trial court erred by applying Nevada law to defendants' fraud-based claims. The Receiver's response brief is currently due to be filed on June 27, 2022.

- ***8894132 Canada Inc. v. Semafo Inc. and TCA Global Credit Master Fund, LP***, **Quebec, Case No. 500-17-088880-151; *In the matter of the Bankruptcy of 8894132 Canada Inc. (debtor) and TCA Global Credit Master Fund, LP (creditor)*, Quebec 540-11-010847-194; *In the matter of the Bankruptcy of 8895791 Canada Inc. (debtor) and TCA Global Credit Master Fund, LP,* Quebec 540-11-010848-192**

In a proceeding related to the Groupe Mercator proceedings, the Master Fund retained Canadian counsel to institute involuntary bankruptcy actions against the Numbered Entities.

25

Counsel for the Receiver has been in contact with the Master Fund's local counsel in Canada, who informed the Receiver that there are likely no assets in either of these proceedings.

However, local counsel was also tasked to pursue a collection action against a South African mining company, Semafo, for its failure to remit $300,000 in payments owed to Groupe Mercator for freight services provided. The court previously stayed that proceeding indefinitely at the end of 2019, after a local terrorist attack in South Africa. The court re-set the matter for trial in early December 2020.

Counsel for the Receiver participated in a two-day trial in Canada against Semafo and its local entities. In a victory for the Receivership Estate, on January 5, 2021, the court entered judgment in the Receiver's favor and against Semafo, requiring Semafo to pay the Receiver approximately $318,000. Semafo appealed. During this Reporting Period, Canadian appellate court ruled that the Canadian defendant was not a corporate guarantor of the debt, and reversed the judgment. Because the remaining entities to be sued are located in Africa, and the matter is likely time-barred, the Receiver no longer anticipates any recovery in this matter. However, a demand letter was issued to the African entities.

- ***AW Exports Pty Ltd. & Ors ats Australian Worldwide Pty Ltd (in liq) & Anor Supreme Court of New South Wales, Proceedings 2017/00040926; In re Pie Face Pty Ltd.*** (A.C.N. 087 384 736)

The Master Fund loaned monies to two entities in Australia, Australian Worldwide (a grocery exporter) and Pie Face (a fast food pie chain). Both of those entities are currently in liquidation. In *Australian Worldwide*, the Master Fund retained a receiver/liquidator under Australian procedure to pursue an adversary proceeding against the officer and directors of the debtor, for fraudulent transfers. The Master Fund did not prevail in that proceeding, and the court entered an award of fees and costs in defendants' favor. Defendants have sought to recover

approximately $400,000 (AUS) from the liquidator in that proceeding and, in turn, from the Receiver.

In the *Pie Face* matter, the Master Fund also engaged a receiver/liquidator, which has been served with a $1.9 million (AUD) tax liability from the Australian Taxation Office, for which the liquidator may potentially also seek indemnification from the Receivership for some amount.

AW Exports appeared and filed an objection to the Receiver's proposed Distribution Plan stating that they are foreign judgment holders deserving of trade creditor status in the amount of $425,575.92 AUD, plus post-judgment interest, and asking that the Court order that all trade creditors be paid immediately in full, prior to all investors, and that the Receiver immediately propose a dispute resolution process. [ECF No. 242]. The Receiver's Motion for Approval of Distribution Plan and First Interim Distribution lists AW Exports and related parties as potentially having a creditor claim in such amount.

## VII.   THE RECEIVER'S OBSERVATIONS

The Receiver's priorities for the Eighth Reporting Period included completing and filing the Receiver's Motion for Approval of Distribution Plan and First Interim Distribution, continuing to resolve matters necessary to sell remaining SPVs and their assets, progressing the sale of the Receivership's loan and judgment portfolio, and continuing to investigate and file third party litigation claims, while seeking to settle such matters pre-suit wherever feasible.

The Receiver made significant progress on the stated priorities. With respect to distributions, the Receiver and his team completed his proposed Distribution Plan and filed and served his Motion for Approval of Distribution Plan and First Interim Distribution on stakeholders and others. Even though the proposed Distribution Plan affects and compromises over 1400 stakeholders' claims, only fifteen objections or negative comments were received. It will be for

CASE NO. 20-CIV-21964-CMA

the Court to determine whether to approve the Receiver's proposed Distribution Plan. The Receiver believes, however, that his proposed Distribution Plan is most fair and equitable, consistent with governing law, and significantly superior to the alternatives proposed by objectors.

With respect to SPVs, the Receiver successfully settled significant litigation in New Zealand over the ownership of its operating business in New Zealand. Besides avoiding additional litigation expense and the possibility of loss on the merits, the settlement authorizes a market sales process that will maximize value to the Receivership Estate. Regarding sale of the Receivership's loan portfolio, the Receiver and his investment banker, B. Riley, completed the initial bid process and is in the process of determining the highest and best offer, which the Receiver will submit to the Court for approval shortly.

The Receiver also continued to investigate and pursue claims against various parties on behalf of the Receivership Estate, and to progress fraudulent transfer claims and demands already asserted or filed. As a result of these efforts, the Receiver successfully resolved one significant transfer claim for $200,000.

The Receiver also obtained court approval of a process to pursue and resolve net winner claims, and issued the first tranche of demand letters in an effort to settle as many claims as possible without filing suit.

Lastly, with respect to loan collection matters, the Receiver limited his team's efforts given the upcoming sale of the majority of the loan portfolio. In appropriate cases, however, the Receiver obtained necessary orders to domesticate judgments, issued writs of garnishment, and issued post-judgment discovery.

## VIII.   CONTINUING WORK

During the next reporting period, the Receiver's priorities will include obtaining final

approval of the distribution plan, making an initial distribution, and completing the sale of the Receivership's loan and judgment portfolio.

The Receiver and his professionals will also continue to seek to resolve matters preventing the disposition of remaining SPVs and other Receivership assets, and maximize value from such assets, as well as to resolve collection matters. The Receiver and counsel will also continue to investigate and file third party litigation claims, while seeking to settle such matters pre-suit wherever feasible. As previously mentioned, the value of assets in the Receiver's possession (excluding litigation claims) is far less than stated on the Funds' NAVs reported to investors and prospective investors. Accordingly, substantial litigation recoveries are essential to maximizing stakeholder distribution. The Receiver will seek counsel to handle such matters on a contingency basis to avoid risk of loss to the Receivership Estate wherever appropriate.

Finally, the Receiver and his team will continue to handle investor inquiries and provide investors and investment advisors with information.

Respectfully submitted,

Jonathan E. Perlman, Esq.
Florida Bar No. 773328
jperlman@gjb-law.com
*Receiver for the Receivership Entities*

-and-

GENOVESE JOBLOVE & BATTISTA, P.A.
100 S.E. Second Street, 44th Floor
Miami, Florida 33131
Telephone: (305) 349-2300

By: s/Elizabeth G. McIntosh
         Elizabeth G. McIntosh, FBN 1011555
         emcintosh@gjb-law.com
         Gregory M. Garno, FBN 87505
         ggarno@gjb-law.com
         *Attorneys for Jonathan E. Perlman, Esq.,*
         *Receiver for the Receivership Entities*

29

CASE NO. 20-CIV-21964-CMA

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 25, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified via transmission or Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Elizabeth G. McIntosh
Attorney

CASE NO. 20-CIV-21964-CMA

**SERVICE LIST**
*Securities and Exchange Commission v. TCA Fund Management Group Corp., et al.*
**Case No. 20-Civ-21964-CMA**

Jean-Pierre Bado, Esq
jbado@gjb-law.com
Paul Joseph Battista, Esq.
pbattista@gjb-law.com
Michael A Friedman, Esq.
mfriedman@gjb-law.com
Gregory M. Garno, Esq.
ggarno@gjb-law.com
John H. Genovese, Esq.
jgenovese@gjb-law.com
Brett M. Halsey, Esq.
bhalsey@gjb-law.com
Heather L. Harmon, Esq.
hharmon@gjb-law.com
Eric Jacobs, Esq.
ejacobs@gjb-law.com
Elizabeth G. McIntosh, Esq.
emcintosh@gjb-law.com
Jonathan Perlman, Esq.
jperlman@gjb-law.com
Genovese Joblove & Battista, P.A.
100 Southeast 2nd Street, Suite 4400
Miami, Florida 33131
*Attorneys for Jonathan E. Perlman,*
*Receiver*

Andrew O. Schiff, Esq.
schiffa@sec.gov
Stephanie N. Moot, Esq.
moots@sec.gov
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
*Attorneys for Plaintiff Securities and*

*Exchange Commission*
James J. Webb, Esq.
jwebb@mitrani.com
Mitrani, Rynor, Adamsky & Toland, P.A.
1200 Weston Road, PH
Weston, FL 33326
*Attorneys for Interested Parties Krystal*
*Lazares-Scaretta, Robert A. Scaretta and*
*American Gold Rush, LLC*

Andrew Fulton , IV, Esq.
andrew@kelleylawoffice.com

Brian S. Dervishi, Esq.
bdervishi@wdpalaw.com

Craig Vincent Rasile
crasile@mwe.com

Gerald Edward Greenberg, Esq.
ggreenberg@gsgpa.com

Gregg Alan Steinman
gsteinman@sflp.law

Mark David Bloom, Esq.
mark.bloom@bakermckenzie.com

Martha Rosa Mora, Esq.
mmora@arhmf.com

Michael David Heidt, Esq.
mheidt@aol.com