**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:20-cv-21964-CMA**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | : |
| **Plaintiff,** | : |
| v. | : |
| **TCA FUND MANAGEMENT GROUP CORP., et al.** | : |
| **Defendants.** | : |

**REPLY OF THE SECURITIES AND EXCHANGE COMMISSION ("SEC") TO FOREIGN REPRESENTATIVES' MEMORANDUM OF LAW IN OPPOSITION TO RECEIVER'S MOTION FOR APPROVAL OF DISTRIBUTION PLAN AND FIRST INTERIM DISTRIBUTION [ECF NO. 208] AND REQUEST FOR HEARING**

The SEC submits this reply to the Foreign Representative's memorandum in opposition to the Receiver's motion to approve the distribution plan. The SEC understands that the Receiver will be submitting a comprehensive reply, and we submit this more limited response to apprise the Court of the SEC's view of the proper treatment of investors.

**I.     INTRODUCTION**

TCA Fund Management Group Corp. ("TCA"), a Florida corporation headquartered in Aventura, was an SEC-registered investment adviser owned by Florida resident Robert D. Press. [ECF No. 1, ¶10; *Robert D. Press*, Securities Act Rel. No. 10991, ¶3, 2021 WL 4500066, *2 (Sept. 30, 2021). TCA perpetrated a fraud on investors, grossly overstating the value of assets it managed—loans and equity investments in small and medium sized businesses. As is typically the case, TCA's assets under management will be insufficient to make investors whole. The Court-appointed Receiver proposes distributing funds to investors pro rata based on the amount of their losses—an unquestionably proper methodology.

Prior to TCA's demise, certain investors in TCA Global Credit Fund, Ltd. ("Feeder Ltd."), an entity formed under Cayman Islands law, demanded their money back. Because Feeder Ltd. failed to honor these requests, under Cayman law these investors became creditors ("Redemption Creditors"), entitled in a Cayman insolvency proceeding to priority over identically situated investors who had not requested a refund. On January 21, 2020, Feeder Ltd. advised its investors that it would be winding up its affairs, noting that it had received redemption and withdrawal requests in excess of available funds. [ECF No. 1, ¶46]

On April 1, 2020, a Redemption Creditor initiated liquidation proceedings in the Cayman Islands with respect to Feeder Ltd., seeking the appointment of two individuals from Ernst & Young as liquidators. *In re TCA Global Credit Fund, Ltd.*, No. 21-11513 ["Chapter 15 Case"], ECF No. 1, at p.9, et seq. (Bankr. S.D. Fla.). On or about that same day, all of the defendant and relief defendant entities in this case, including Feeder Ltd., consented to the appointment of a receiver over them. [ECF No. 6-1, at p.2 ¶3 ("Defendants and Relief Defendants agree to the entry of an order appointing a receiver over each of them.")] The Commission filed the Complaint on May 11, 2020, and the Court appointed the Receiver that same day. The appointment order precluded the continuation of any actions against the receivership entities. [ECF No. 5, ¶26] Two days later (and, upon information and belief, with knowledge of this Court's appointment of the Receiver), a hearing was held in the Cayman Islands, and the Cayman court appointed the Ernst & Young individuals as liquidators ("Liquidators") over Feeder Ltd. [Chapter 15 Case, ECF No. 1, at 18 et seq.]

Liquidators argue that the Court should not approve the Receiver's distribution plan because it is inconsistent with Cayman law. But that very inconsistency is the reason why this

Court should not follow the Cayman practice, which would provide an undeserved windfall to a limited number of investors at the expense of the others.

The U.S. policy is clear: appointment of a receiver is an exercise of the Court's equitable power to act "for the benefit of investors." 15 U.S.C. § 78u(d)(5). A fair distribution treats similarly situated investors alike, and does not allow investors to assert remedies that might give them an edge over other investors. In fact, one case considered the exact situation here (minus the foreign law twist), refusing to treat investors who attempted to redeem as creditors. *See SEC v. Wealth Management LLC*, 628 F.3d 323 (7th Cir. 2010). A second equally fundamental policy of insolvency—both in bankruptcy and equity receiverships—is to avoid "picking at the carcass" in the period leading up to formal proceedings, and statutes such as those allowing for the recovery of fraudulent transfers and preferences help discourage such activity and remedy it when it occurs.

These policies make clear that—whether viewed as an issue of choice-of-law or comity—this Court should give no deference to the Cayman liquidation scheme. As a matter of choice-of-law (what Liquidators refer to as the internal affairs doctrine), even if Cayman law were applicable, the Court would no more give weight to the Cayman preference to Redemption Creditors than it would to state law doctrines that might otherwise give certain investors a preference over others. There is also no reason to apply comity here. While the Court has recognized Liquidators under Chapter 15 of the Bankruptcy Code, any further relief is discretionary. Under Chapter 15, the Court should not grant a remedy without taking into account the rights of all persons interested in Feeder Ltd., including investors who would be wiped out if the Cayman scheme were followed. In addition, the Court should exercise its discretion under 11 U.S.C. § 1506 to not follow Cayman law, given the fundamental conflict between U.S. and Cayman policy with respect to Redemption Creditors.

**II.     Argument**

    **A.     Receiver's Pro Rata Distribution Plan is Appropriate**

Under Section 21(d)(5) of the Exchange Act, the SEC "may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors." 15 U.S.C. § 78u(d)(5). The district court has the "equitable power to appoint a receiver," *SEC v. Torchia*, 922 F.3d 1307, 1317 (11th Cir. 2019), which includes "'broad powers and wide discretion to determine relief in an equity receivership.'" *SEC v. Quiros*, 966 F.3d 1195, 1199 (11th Cir. 2020) (quoting *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992)). That discretion extends to the court's determination of "to whom and how the assets of the Receivership Estate will be distributed." *SEC v. Homeland Communications Corp.,* 2010 WL 2035326, No. 07cv80802, *2 (S.D. Fla. May 24, 2010). "No specific distribution scheme is mandated so long as the distribution is fair and equitable." *SEC v. Onix Capital, LLC*, No. 16cv24678, 2018 WL 1124435, *2 (S.D. Fla. Feb. 23, 2018) (citing *Homeland Communications*, 2010 WL 2035326, *2).

In considering a proposed distribution plan, the Court should be guided by the principle that the "goal" of a distribution in a fraud case "is to grant fair relief to as many investors as possible." *Torchia*, 922 F.3d at 1311. Among other things, a fair distribution avoids preferring certain investors based on "fortuit[ies]," *Elliott*, 953 F.2d at 1570, or their "success[] in the race of diligence." *Cunningham v. Brown*, 265 U.S. 1, 13 (1924).

In *Elliott*, the Eleventh Circuit held that the district court properly refused to allow certain investors to trace their investment to particular assets and lay claim to them, to the exclusion of other investors. In *Wealth Management LLC*, two investors who had attempted to redeem their investment sought to be treated as creditors entitled to priority under the relevant state law, *see* 628 F.3d at 333 n.6. The district court held that the redeemers' claim to creditor status was subject

4

to equitable subordination, and the Seventh Circuit affirmed, citing *Elliott* and holding that the district court's order "promote[d] fairness by preventing a redeeming investor from jumping to the head of the line and recouping 100 percent of his investment by claiming creditor status while similarly situated nonredeeming investors receive substantially less." *Id.* at 334; *see also SEC v. Quan*, 870 F.3d 754, 761-63 (8th Cir. 2017) (district court properly approved pro rata distribution notwithstanding certain investors' contractual entitlement to a preference); *United States v. Vanguard Investment Co., Inc.*, 6 F.3d 222, 226 (4th Cir. 1993) ("Given its equitable nature and purposes, a district court supervising . . . a [federal] receivership has the discretionary power to deny these equitable remedies [of rescission and restitution] as inimical to receivership purposes even though they are or might be warranted under controlling law."). Therefore, the Receiver's proposal to treat investors proportional to their losses is consistent with the Exchange Act and the case law.

### B. The Court Should Not Adopt the Unfair Outcome Required by Cayman Law

Liquidators—appointed at the behest of a Redemption Creditor—offer several arguments as to why the Court should follow the Cayman distribution scheme, pursuant to which Redemption (and Unregistered Subscriber) Creditors would receive nearly all of the receivership assets, leaving nothing for investors. But they cite nothing that would compel the Court to approve such an inequitable result.

#### 1. Internal Affairs Doctrine

Liquidators cite the internal affairs doctrine, a choice-of-law principle under which the law of the jurisdiction of formation governs an entity's internal affairs. They cite no cases applying this principle to the priority of claims in SEC receivership cases. Moreover, the premise of that argument is that if Cayman law would apply to an ordinary internal affairs issue, then this Court

5

would be obliged to approve a Cayman-compliant distribution scheme. As shown above this is incorrect. *Elliott* and the other cases discussed show that in SEC receivership cases, courts will approve distribution plans that are fair and equitable—treating similarly situated investors alike—notwithstanding state law doctrines that might compel a different result. Thus, the proper choice of law under the internal affairs doctrine is simply immaterial—if the applicable law compels an inequitable result, the court will not follow it.

### 2. Federal Common Law

Liquidators argue that federal courts should ordinarily not develop federal common law, and should apply Cayman law instead. However, the Exchange Act specifically directs courts to employ equitable remedies for the benefit of investors, and the cases from the Eleventh Circuit and elsewhere discussed above lay out the principles governing distribution. Nothing in *Rodriguez v. FDIC*, 140 S. Ct. 713 (2020), is to the contrary. There, the question was whether state law or federal common law governed which of two related insolvent entities—the parent (in bankruptcy) or the subsidiary (in receivership)—was entitled to a federal tax refund. The Supreme Court held that state law would govern, because there was no "unique federal interest" in how the refund would be allocated—the IRS's interest ended once it had delivered the refund in accordance with its regulations. *Id.* at 717-18. Here, by contrast, the SEC exists to protect investors, with statutory authorization to "seek . . . any equitable relief that may be appropriate or necessary for the benefit of investors." 15 U.S.C. § 78u(d)(5). Thus, unlike *Rodriguez*, there is a keen federal interest in how recovered funds are distributed and a statutory command as to how that should happen: the application of equitable principles for the benefit of investors.

    **3.**  **Comity**

Finally there's comity, which is what Liquidators' argument really boils down to. According to Liquidators, no matter how unfair the result, no matter how clear the law in the U.S. that the Court should give no weight to the happenstance of attempted redemption, comity is a trump card obliging this Court to reject a distribution that fails to follow Cayman law. They are wrong.

As an initial matter, comity

> is not a rule of law, but one of practice, convenience, and expediency. Although more than mere courtesy and accommodation, comity does not achieve the force of an imperative or obligation. Rather, it is a nation's expression of understanding which demonstrates due regard both to international duty and convenience and to the rights of persons protected by its own laws.

*GDG Acquisitions, LLC v. Government of Belize*, 749 F.3d 1024, 1030 (11th Cir. 2014). This same standard applies to the comity contemplated by Chapter 15. *See In re Vitro S.A.B. de CV*, 701 F.3d 1031, 1043-44 (5th Cir. 2012). Thus, the decision whether to grant relief after recognition of the foreign proceeding is discretionary. *In re Black Gold S.A.R.L.*, 635 B.R. 517, 527 (9th Cir. BAP 2022) ("After a petition for recognition has been granted, the court has a considerable amount of discretion."); *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 333 (S.D.N.Y. 2008) (post-recognition relief is "largely discretionary and turns on subjective factors that embody principles of comity").

To the extent Liquidators seek to distribute Feeder Ltd.'s assets according to Cayman law, this Court could only grant such relief "if the interests of the creditors and other interested entities [here investors[1]], including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a). Sufficient

---

[1] Under the Bankruptcy Code, an "entity" includes a "person," and a "person" includes an "individual." 11 U.S.C. §§ 101(15), 101(41).

7

protection "require[s] a particularized balancing analysis" between the interests of creditors, other interested entities, and the debtor. *Jaffé v. Samsung Electronics Co.*, 737 F.3d 14, 29 (4th Cir. 2013); *Vitro*, 701 F.3d at 1067 n.42. As part of this inquiry, the court may take into account whether foreigners' interests are sufficiently protected. *SNP Boat Service S.A. v. Hotel Le St. James*, 483 B.R. 776, 784 (S.D. Fla. 2012). Courts also consider "the just treatment of all holders of claims against the bankruptcy estate, the protection of U.S. claimants against prejudice and inconvenience in the processing of claims in the foreign proceeding, and the distribution of proceeds of the foreign estate substantially in accordance with the order prescribed by U.S. law." *In re PT Bakrie Telecom Tbk*, 628 B.R. 859, 876 (Bankr. S.D.N.Y. 2021) (citations and quotation omitted). Here, the absence of sufficient protection is apparent: a Cayman distribution would swallow all of the assets for a relatively lucky few.[2] Such a distribution would not be "substantially in accord" with U.S. law—in fact, it would be directly contrary to it. Therefore any relief under Section 1521 that would involve giving the Redemption Creditors priority over other investors would not pass muster under Section 1522.

In addition to Section 1522, the court should deny relief under 11 U.S.C. § 1506, which provides that "[n]othing in this chapter prevents the court from refusing to take an action governed by this chapter if the action would be manifestly contrary to the public policy of the United States." The Commission recognizes that this exception is "narrow." *In re ABC Learning Centres Ltd.*,

---

[2]Liquidators also refer to the distribution to ordinary creditors. The SEC agrees they should be provided for and we don't understand the Receiver as intending to exclude them. Liquidators also complain about the failure to provide for the expenses of Liquidators' professionals. This claim deserves no sympathy. Ernst & Young and their Cayman and U.S. counsel took this case on at their own risk. They have done nothing to increase the value of the receivership estate and much to diminish it by causing the Receiver to expend substantial resources addressing their Chapter 15 petition and now this objection. The notion that Liquidators' efforts are equivalent in some way to the Receiver's is absurd.

8

728 F.3d 301, 309 (3d Cir. 2013); *In re Fairfield Sentry Ltd.*, 714 F.3d 127, 139 (2d Cir. 2013); *Vitro*, 701 F.3d at 1069. However, it is not toothless—the exception will apply if the requested action "would impinge severely on a U.S. constitutional or statutory right." *ABC*, 728 F.3d at 309; *Marigrove, Inc. v. Sauer de Arruda Pinto*, No. 14cv22580, 2015 WL 13857424, *7 (S.D. Fla. Mar. 30, 2015) ("[C]omity shall not be granted when doing so would contravene fundamental U.S. public policy . . . ."). In *ABC*, the court found that the differences between Australia's treatment of secured creditors and the U.S. treatment would not manifestly contravene public policy. 728 F.3d at 311 ("Rather than manifestly contravene our policy, Australian law established a different way to achieve similar goals."). To the contrary, under the circumstances of that case, a *failure* to recognize the Australian proceeding would encourage creditors to race to collect assets, "enabling some creditors to collect fully on the debts and others not at all, and with no regard for priority," thus "contraven[ing] [the U.S.] policy of providing an orderly liquidation procedure." *Id.*

In this case, prioritizing the Redemption Creditors (as well as the Unregistered Subscribers) would not merely tinker around the edges of the U.S. priorities, it would swallow them whole. Allowing investors to upgrade themselves to creditor status by demanding redemption and thereby grabbing a preference at the expense of similarly situated investors would be directly contrary to the Exchange Act's focus on the "benefit of investors" and the case law requirement of a fair and equitable distribution treating similarly situated investors the same. It would also encourage the very race of diligence condemned in *Cunningham*—the U.S. statutory remedies against fraudulent transfers and, in bankruptcy, voidable preferences, all serve to discourage such "runs on the bank." Avoiding such conduct in fraud cases is particularly important, since multiple demands for return of investment may encourage fraudsters to double down on fundraising to delay the collapse of

their scheme. Avoiding such activity is fundamental to the way in which insolvency proceedings—either bankruptcy or equity receivership—work in this country. *See In re Gold & Honey, Ltd.*, 410 B.R. 357, 371-72 (Bankr. E.D.N.Y. 2009) (denying recognition on public policy grounds to a foreign proceeding that seized debtor's assets after the U.S. automatic stay went into effect; permitting such conduct would circumvent the policies of "preventing one creditor from obtaining an advantage over other creditors, and providing for the efficient and orderly distribution of a debtor's assets to all creditors in accordance with their relative priorities"). Given the irreconcilable differences between the Cayman prioritization of Redemption Creditors and the U.S. prioritization of a fair and equitable distribution that prevents investors from attempting to get a leg up on the eve of a scheme's collapse, the Court can and should rely on section 1506 to reject Liquidators' efforts to have this Court give an extreme preference to investors based on the happenstance of their having sought to redeem their investments.

Finally, Liquidators refer to other cases where the SEC or a receiver in an SEC case has cooperated with or deferred to Cayman proceedings. However, this just shows that we are not reflexively opposed to comity provided that investors are protected. The SEC might well have taken a different position in this case were it not for the Redemption Creditor and Unregistered Subscriber preferences and the violence they do to the fair and equitable distribution scheme required by the Exchange Act.

## CONCLUSION

For the reasons stated above, the SEC requests that the Court overrule Liquidators' objections to the Receiver's distribution plan.

June 6, 2022

Respectfully submitted,

By:  **Andrew O. Schiff**
Senior Trial Counsel
S.D. Fla. No. A5501900
Direct Dial: (305) 982-6390
Email: schiffa@sec.gov

Stephanie N. Moot
Senior Trial Counsel
Fla. Bar No. 30377
Direct Dial: (305) 982-6313
Email: moots@sec.gov

Attorneys for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4146

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF this 6th day of June 2022.

/s/ Andrew O. Schiff

**SERVICE LIST**

| | |
|---|---|
| Gregory M. Garno, Esq.<br>ggarno@gjb-law.com<br>Genovese Joblove & Battista, P.A.<br>Elizabeth G. McIntosh, Esq.<br>emcintosh@gjb-law.com<br>100 Southeast 2nd Street, Suite 4400<br>Miami, Florida 33131<br>Telephone: (305) 349-2300<br>Facsimile: (305) 349-2310<br>*Attorneys for Jonathan E. Perlman, Receiver*<br><br>Edward D. Buckley<br>edbuckley@buckleybeal.com<br>Buckley Beal, LLP<br>600 Peachtree Street NE, Suite 3900<br>Atlanta, GA 30308<br>Telephone: (404) 781-1100<br>Facsimile: (404) 781-1101<br>*Attorneys for Thomas Day*<br><br>Ephraim R. Hess<br>erh@thehessfirm.com<br>Hess Law Firm<br>205 Davie Boulevard<br>Fort Lauderdale, FL 33315<br>Telephone: (954) 585-8599<br>*Attorneys for Thomas Day*<br><br>James J. Webb, Esq.<br>jwebb@mitrani.com<br>Mitrani, Rynor, Adamsky & Toland, P.A.<br>1200 Weston Road, PH<br>Weston, FL 33326<br>*Attorneys for Interested Parties Krystal Lazares-Scaretta, Robert A. Scaretta and American Gold Rush, LLC* | Andrew Fulton, IV, Esq.<br>andrew@kelleylawoffice.com<br><br>Brian S. Dervishi, Esq.<br>bdervishi@wdpalaw.com<br><br>Craig Vincent Rasile<br>crasile@mwe.com<br><br>Gerald Edward Greenberg, Esq.<br>ggreenberg@gsgpa.com<br><br>Gregg Alan Steinman<br>gsteinman@sflp.law<br><br>Mark David Bloom, Esq.<br>mark.bloom@bakermckenzie.com<br><br>Martha Rosa Mora, Esq.<br>mmora@arhmf.com<br><br>Michael David Heidt, Esq.<br>mheidt@aol.com |

12