**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 20-CIV-21964-CMA**

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

v.

TCA FUND MANAGEMENT GROUP CORP.,
*et al.*,

      Defendants.

_____/

### <u>RECEIVER'S EIGHTEENTH QUARTERLY STATUS REPORT</u>

Jonathan E. Perlman, Esq.
Florida Bar No. 773328
JEPerlman@venable.com
*Receiver for the Receivership Entities*

      -and-

VENABLE LLP
801 Brickell Avenue, Suite 1500
Miami, FL 33131
Tel: (305) 349-2300
Gregory M. Garno, Esq.
Florida Bar No. 87505
ggarno@venable.com
Elizabeth G. McIntosh. Esq.
Florida Bar No. 1011555
emcintosh@venable.com
*Attorneys for Jonathan E. Perlman, Esq.,*
*Receiver for the Receivership Entities*

## TABLE OF CONTENTS

EXECUTIVE SUMMARY ................................................................................... 1

THE RECEIVER'S EIGHTEENTH QUARTERLY STATUS REPORT ........................... 3

I.  BACKGROUND ...................................................................................... 3

II.  RELATED FUNDS ................................................................................. 4

III. ACTIONS TAKEN BY THE RECEIVER DURING THIS REPORTING PERIOD ..... 4

    A.  The Receivership Bank Accounts ................................................... 4

    B.  Business Operations ...................................................................... 5

    C.  Accounting and Forensic Work ...................................................... 5

    D.  Receivership Entities' Tax Returns ................................................ 5

    E.  Receivership Entities' Technology Progress ................................... 6

    F.  Communications with Third Parties ................................................ 6

    G.  Website/Ongoing Communications ................................................. 6

    H.  Receivership Entities' Records ...................................................... 6

    I.  Investigation of Third-Party Litigation Claims ............................... 7

    J.  Investigation of Investor, Subscriber, Redemption and Creditor Claims, and First Interim Distribution Plan .................................... 8

    K.  Net Winners Actions ..................................................................... 10

IV. CHAPTER 15 PROCEEDINGS ................................................................ 10

V.  CAYMAN ISLANDS ............................................................................... 10

VI. RECEIVERSHIP ESTATE ASSETS ........................................................... 11

    A.  Cash Assets ................................................................................. 11

    B.  Special Purpose Vehicles ............................................................. 11

        1.  SPV – Domestic .................................................................... 12

        2.  SPV – International ............................................................... 12

        3.  SPV – Real Property and Other Assets ................................... 14

    C.  Loan Portfolio ............................................................................. 14

        1.  Sale of the Loan Portfolio ..................................................... 14

        2.  Continuing Overview of the Loan Portfolio ............................ 14

    D.  Third Party Litigation ................................................................... 15

    E.  Litigation Initiated by Master Fund Against Borrowers ................... 17

VII.  THE RECEIVER'S OBSERVATIONS ........................................................ 20

VIII.  CONTINUING WORK ......................................................................... 21

# EXECUTIVE SUMMARY

1. On May 11, 2020, this Court appointed Jonathan E. Perlman, Esq. as Receiver over Defendants and Relief Defendants TCA Fund Management Group Corp., TCA Global Credit Master Fund, LP, TCA Global Credit Fund GP, Ltd., TCA Global Credit Fund LP, and TCA Global Credit Fund, Ltd. *See* [ECF No. 5]. On May 18, 2020, the Court expanded the Receivership to include TCA Global Lending Corp., which served as a "tax blocker" for the TCA Global Credit Fund, Ltd. feeder fund investors. *See* [ECF No. 16].

2. At the time of the Receiver's appointment, the Receivership Entities' U.S. bank accounts had a total balance of $308,267. As of November 18, 2024, the Receivership Entities' bank accounts at Axos Bank have a combined balance of $84,866,168. Income and expenses are reflected in **Exhibit "A"** attached hereto.

3. During this Eighteenth Reporting Period, the Receiver continued to progress his two federal court lawsuits: (1) against the Receivership Entities' former auditors Grant Thornton Cayman and Grant Thornton Ireland relating to their alleged gross negligence; and (2) against the fund administrators for the TCA Funds: Bolder Fund Services (USA), LLC f/k/a Circle Investment Support Services (USA), LLC, Bolder Fund Services (Cayman), Ltd. f/k/a Circle Investment Support Services (Cayman), Ltd., and Bolder Group Holdings B.V. (collectively, "Bolder Defendants") for breach of contract and tortious conduct relating to their alleged gross overstatement of the Funds' NAVs and profits.

4. As discussed in the last Report, final resolution of the Receiver and Class Action cases against Grant Thornton Cayman and Grant Thornton Ireland had been rendered more complicated by demands received from the Grand Cayman court-appointed joint official liquidators for TCA Global Credit Fund, Ltd Feeder ("JOLs"). During this Eighteenth Reporting Period, the parties made significant progress in resolving outstanding issues standing in the way from submitting a final proposed settlement agreement for approval. The Receiver hopes to submit an agreement for Court approval prior to the next Report.

5. As to the Receiver's action against the Bolder entities, as discussed in the last Report, on August 27, 2024, the court entered an order granting in part and denying in part the Bolder Defendants' motion to dismiss, which resulted in the dismissal of some but not all of the Bolder Defendants. During this Eighteenth Reporting Period, the Receiver continued to prosecute the action against the remaining Bolder Defendant, including setting depositions. Also, on September 24, 2024, the Receiver filed a motion seeking reconsideration of the court's dismissal of two Bolder entities, including Bolder USA, as constituting a manifest error. Bolder filed an opposition, and on October 25, 2024, the Receiver submitted a reply memorandum. Accordingly, the Receiver's motion for reconsideration is fully briefed and awaiting the court's ruling.

6. During this Eighteenth Reporting Period, the Receiver and his team also continued to pursue an expeditious initial distribution, including by completing distribution notices, exhibits, and claims analysis; soliciting and negotiating third-party vendor proposals to

handle the initial distribution; obtaining additional contact information as needed for certain distributes; and responding to particular investor-creditor questions regarding their claims and distribution amounts.

7.      During this Eighteenth Reporting Period, the Receiver also continued to pursue fraudulent transfer and net winner claims, to market and sell assets, and to manage the few remaining wholly owned operating entities.

### THE RECEIVER'S EIGHTEENTH QUARTERLY STATUS REPORT

Jonathan E. Perlman, court-appointed Receiver (the "Receiver") over the Receivership Defendants TCA Fund Management Group Corp. ("FMGC") and TCA Global Credit Fund GP, Ltd. ("GP") (FMGC and GP are hereinafter referred to collectively as "Defendants"), and Relief Defendants TCA Global Credit Fund, LP ("Feeder Fund LP"), TCA Global Credit Fund, Ltd. ("Feeder Fund Ltd.," and with Feeder Fund LP, "Feeder Funds"), TCA Global Credit Master Fund, LP (the "Master Fund") (Master Fund, together with Feeder Funds, are the "Funds"), and TCA Global Lending Corp. ("Global Lending") (Defendants, the Funds, and Global Lending are hereinafter referred to collectively as the "Receivership Entities"), respectfully submits his Eighteenth Quarterly Status Report (the "Report").

## I.      BACKGROUND

The Receiver filed his First Quarterly Status Report on August 4, 2020 (the "First Report") and his Second Quarterly Status Report (the "Second Report") on November 5, 2020. *See* [ECF Nos. 48, 70]. The First and Second Reports provide background information on the events leading up to the appointment of the Receiver and provide a detailed explanation of the Receivership Entities and the Receiver's professionals.[1] This Report covers the period of September 5, 2024 to the date of this filing (the "Eighteenth Reporting Period").[2] The Report contains assessments and observations, which are subject to change as the Receiver and his professionals[3] continue to

---

[1] All capitalized terms have the same meaning as defined in the Receiver's First Report and First Interim Omnibus Application for Allowance and Payment of Professional Fees and Reimbursement of Expenses for May 11, 2020 through June 30, 2020. [ECF No. 48, 55]. *See also*, the Receiver's Third Quarterly Status Report ("Third Report") filed February 3, 2021. [ECF No. 108].

[2] The Eighteenth Interim Omnibus Application for Allowance and Payment of Professional Fees and Reimbursement of Expenses for July 1, 2024 through September 30, 2024 to be filed hereafter covers a different timeframe than the Eighteenth Reporting Period.

[3] Effective January 1, 2023, the Receiver, as well as his counsel, became part of Venable LLP

conduct their investigation and review the affairs of the Receivership Entities and related parties.

## II.   RELATED FUNDS

As discussed in prior status reports, two affiliated investment funds with overlapping management and employees, TCA Opportunities Fund, I-A, LP ("TCA Opportunities Fund") and the TCA Special Situations Credit Strategies ICAV (an Irish Collective Asset Vehicle incorporated in Ireland) ("TCA ICAV"), marketed themselves as operating under the "TCA Capital" umbrella. Previously, the Receiver successfully resolved the promissory note debts owed by TCA Opportunities Fund in exchange for payments totaling $3,793,512.66. The Receiver also submitted a claim for $1.2 million with the TCA ICAV Joint Official Liquidators in Ireland, which the Receiver continues to pursue.

## III.   ACTIONS TAKEN BY THE RECEIVER DURING THIS REPORTING PERIOD

### A.   The Receivership Bank Accounts

As of November 18, 2024, the Receivership's qualified settlement fund accounts have a total balance of $84,866,168.[4] A schedule of the Receiver's receipts and disbursements is attached hereto as **Exhibit "A."** The interest rate as of November 18, 2024, was 4.3052%.

| Account Ending Number | Account Name | Balance as of November 18, 2024 |
|---|---|---|
| *5078 | TCA Global Credit Qualified Settlement Fund | $76,185,259 |

---

("Venable"), and the Receiver retained Venable as his counsel. This Court granted the Receiver's Motion for Authorization to Retain and Substitute Venable LLP as Counsel for the Receiver. [ECF Nos. 324, 325]. Venable is an AmLaw100 law firm with offices in major U.S. cities.

[4] On June 19, 2024, the Receiver transferred all funds in the Receivership accounts (TCA Global Credit Master Fund, LP (*5003), TCA Fund Management Group Corp. (*5045), TCA Global Credit Fund GP, Ltd. (*5037), TCA Global Credit Fund, LP (*5011), TCA Global Credit Fund, Ltd. (*5029)) TCA Global Credit Fund, LP II (*5060)) into two accounts titled, TCA Global Credit Qualified Settlement Fund (*5078) and TCA Global Credit Qualified Settlement Fund II (*5086).

| *5086 | TCA Global Credit Qualified Settlement Fund II | $6,445,314 |
|---|---|---|

### B.     Business Operations

DSI continued to provide financial advisory services to aid in overseeing operations and maximizing the value of the Special Purpose Vehicles ("SPVs"), and other Receivership assets, including JLE Holdings and Transmarine.

### C.     Accounting and Forensic Work

During this Reporting Period, Yip Associates continued to assist the Receiver and his counsel in reviewing and responding to inquiries from investors; reconciling discrepancies; and updating the investor analysis for future distributions. This process remains ongoing.

As of the date of this Report, Yip Associates was able to assist the Receiver in identifying 1,488 investors that collectively invested over $945 million through the Feeder Funds. Of these 1,488 investors, Yip Associates has identified 879 as unsubordinated Net Losers (i.e., individual investors who redeemed less than their subscriptions), who are considered in the Receiver's distribution analysis.

Additionally, at the direction of the Receiver, Yip Associates conducted various conference calls with Receiver's counsel to assist with ongoing litigation, including preparation of damages calculations.

### D.     Receivership Entities' Tax Returns

During this Eighteenth Reporting Period, Rehmann—the Receiver's tax consultant—continued to handle tax issues that arose pre-receivership, as well as tax issues relating to certain SPVs and asset dispositions. Rehmann also continued preparation of several of the Receivership Entities' 2023 income tax returns, as well as the income tax return for the Qualified Settlement

Fund.

### E.    Receivership Entities' Technology Progress

The Receiver continued to receive documents, which were uploaded and maintained by E-Hounds on a secure searchable database.

### F.    Communications with Third Parties

During this Eighteenth Reporting Period, the Receiver spent a significant amount of time working with investor representatives, nominees, and custodians to obtain sufficient contact information for each proposed distribute, i.e., name, email address, phone number, and mailing address, as is necessary for each to be permitted to participate in the Receiver's First Interim Distribution. If you are an investor or represent an investor whose email or mailing address has changed, ***please see Section III.J below***. Additionally, the Receiver continued to communicate with investors and investor representatives to answer questions regarding particular claims and distribution amounts.

### G.    Website/Ongoing Communications

The Receiver continues to maintain the toll-free Receivership "Hotline" at (833) 984-1101 and (305) 913-6731, and an email address for general inquiries at receiver@tcafundreceivership.com. The Receiver also updated the Receivership website www.tcafundreceivership.com to provide new information for investors and interested parties. This Report will be posted on the Receivership website and sent to investors for whom the Receiver has e-mail addresses.

### H.    Receivership Entities' Records

The Receivership Entities' records contain millions of pages of documents relating to: (1) assets, (2) operations, (3) personnel files, (4) marketing, and (5) compliance with industry norms

and regulations. The Receiver and his professionals continue to review the Receivership Entities'
corporate business records, as necessary.

> **I.      Investigation of Third-Party Litigation Claims**

The Receiver and his professionals also continue to investigate claims against third parties.
As discussed previously, numerous fraudulent transfer claims handled by the Receiver's counsel,
Venable, on a contingency basis, have been settled.

In September 2021, Robert Press entered into a settlement with the SEC with respect to the
SEC's claims against him. Under the settlement, Press was required to pay to the Receiver
$5,457,294 over 18 months. On September 30, 2021, the Receiver received the first installment of
$1,364,326; on December 9, 2021, the Receiver received the second installment of $500,000;
between April 1, 2022, and April 8, 2022, the Receiver received the third installment of $750,000;
and on June 29, 2022, the Receiver received the fourth installment payment of $1,000,000. During
the Tenth Reporting Period, Mr. Press failed to make the final installment payment of $1,842,968.
The Receiver continues to work with the SEC regarding its collection.

The Receiver resolved claims against certain directors and officers and the Receivership
Entities' directors' and officers' insurance policy, pending Court approval, for $3,682,007.78. *See*
[ECF Nos. 369, 371]. Grant Thornton entities objected to the claims bar that would have precluded
certain claims by Grant Thornton that the insurance carrier insisted upon. *See* [ECF Nos. 374, 376,
377, 387]. On December 21, 2023, the Court issued an order denying approval of the settlement
for that reason. [ECF No. 420]. As discussed elsewhere in this Report, during this Eighteenth
Reporting Period, the Receiver continued to work on resolving matters involving Grant Thornton
and the JOLs, which will also resolve Grant Thornton's claims bar objection to the directors' and
officers' policy settlement.

**J.      Investigation of Investor, Subscriber, Redemption and Creditor Claims, and First Interim Distribution Plan**

On February 28, 2022, the Receiver filed his Motion for Approval of Distribution Plan and First Interim Distribution seeking to make an initial distribution of approximately $55.45 million USD to investors (including redemption and unpaid subscriber investors), under a "rising tide" pro rata distribution plan. [ECF No. 208]. Of the Receivership Entities' over 1,400 investors, fifteen (15) submitted objections, the most significant being that of the JOLs, who contended, among other things, that the distribution should give priority to unpaid subscriber investors and investors who submitted a redemption request—over investors who had not—in accordance with Cayman law, notwithstanding such request being contrary to United States receivership distribution law favoring equal treatment of all similarly situated investors.

On August 4, 2022, the Court issued a 34-page opinion granting the Receiver's Motion for Approval of Distribution Plan and First Interim Distribution in most respects (the "August 4, 2022 Order"). [ECF No. 284]. The August 4, 2022 Order overruled all objections,[5] including those of the JOLs and unpaid subscribers. [*Id*.]. The Court stayed the August 4, 2022 Order until September 6, 2022, to allow objectors an opportunity to file an interlocutory appeal [*id*.], which stay the Court extended a few weeks more at the JOLs' request. The August 4, 2022 Order also permitted Subordinated Net Losers who promptly provided the Receiver with information to participate in subsequent distributions. [*Id*. at pp. 31-32].

The Court's August 4, 2022 Order also ordered the Receiver to file a creditors' distribution

---

[5] The only exceptions were objections that have been rendered moot and an objection that requested the Court to hold back from the initial distribution additional amounts on account of David Manning, Paycation Travel, Inc. and Xtream Travel, Inc.'s stayed state court lawsuit against Master Fund for an unliquidated amount of damages for allegedly aiding a third party in tortious conduct. The Court deferred ruling on the Manning Objection. [*Id*.], and the Manning/Paycation objections were subsequently resolved.

plan, which the Receiver promptly filed thereafter. [ECF No. 294]. The Receiver's creditors plan proposed identical treatment to creditors as investors under the pro rata "rising tide" methodology approved for distributions to investors. [*Id*.]. On December 2, 2022, the Court approved the Receiver's Creditors Distribution Plan [ECF No. 322].

On October 22, 2022, the JOLs filed a Notice of Appeal from the Court's August 4, 2022 Order. [ECF No. 307]. On November 16, 2022, the United States Court of Appeals for the Eleventh Circuit ordered the parties to brief questions regarding its jurisdiction to hear the appeal. The Receiver answered the questions and filed a motion to dismiss the appeal for lack of jurisdiction on separate grounds. On May 17, 2023, the Receiver filed his Answer Brief. On July 28, 2023, the JOLs filed their Reply Brief. On February 6, 2024, the Eleventh Circuit issued a written opinion agreeing with the Receiver and dismissing the JOLs' appeal as untimely filed, while also suggesting that the district court had acted within her broad discretion in approving the distribution plan (the "February 6 Judgment").

On March 22, 2024, the JOLs submitted a petition for rehearing of the Eleventh Circuit Court of Appeal's February 6 Judgment. The Eleventh Circuit Court of Appeals denied the JOLs' petition on May 8, 2024. On May 16, 2024, the Eleventh Circuit issued its mandate as to its February 6 Judgment. The JOLs have not, to date, filed a petition to the U.S. Supreme Court challenging the Eleventh Circuit's decision. In preparation for making the initial distribution, as well as a potential secondary distribution to investors and creditors, the Receiver diligently worked with stakeholders to obtain additional information and finalize logistics, documentation, and other issues necessary for the distributions during this Eighteenth Reporting Period. If you are an unsubordinated net loser eligible to participate in the Receiver's First Interim Distribution and your circumstances have changed since May 11, 2020, please see below:

**EMAIL AND MAILING ADDRESS CHANGES:** If your email, mailing address, or telephone number has changed since May 2020, please contact receiver@tcafundreceivership.com to update your information as soon as possible.

### K.      Net Winners Actions

In April 2022, the Court authorized the Receiver to pursue claims against investors who were "Net Winners" and fixed procedures for litigation and settlement of such claims. [ECF Nos. 225, 226]. The Court-approved procedures included sending demand letters with pre-approved settlement amounts to Net Winners who received more than $10,000 in Net Winnings under terms that provide that the earliest settlors will receive significant settlement discounts, while subsequent settlors will have to pay a larger amount. *See* [ECF No. 225]. During this Reporting Period, the Receiver continued to pursue recovery upon net winner claims, including negotiating settlements.

## IV.    CHAPTER 15 PROCEEDINGS

By stipulated order, this Court withdrew its reference of the Chapter 15 case brought by the Cayman-recognized JOLs from the U.S. Bankruptcy Court and directed that all further filings be made in this Receivership Case. The JOLs filed objections to the Receiver's Distribution Plan and asked this Court to implement a distribution scheme that would likely pay nothing to investors from the Receiver's over $50 million first interim distribution. [ECF Nos. 236, 240, 241]. As discussed elsewhere, on August 4, 2022, the Court entered an order approving the Receiver's rising tide plan and overruling the JOLs' objections [ECF No. 284], which decision the JOLs appealed to the Eleventh Circuit. The Eleventh Circuit subsequently dismissed the JOLs' appeal for lack of jurisdiction, the JOLs filed a motion for reconsideration, the Eleventh Circuit denied that motion, and the Eleventh Circuit issued its mandate on the judgment.

## V.      CAYMAN ISLANDS

During this Reporting Period, the Baker & Partners law firm in the Cayman Islands continued to provide advice and assistance on particular foreign law matters, including in regard

to the Grant Thornton and Bolder litigations and settlements. Additionally, the Receiver worked with attorneys at Collas Crill and with its directors for one of the receivership funds, Martin Trott and Owen Walker of R&H Restructuring (Cayman) Ltd., regarding certain Cayman Islands' regulatory matters.

## VI.    RECEIVERSHIP ESTATE ASSETS

### A.    Cash Assets

The Receiver and Venable continued to investigate financial accounts associated with the Receivership Entities and advise of the asset freeze ordered by the Court. To date, the Receiver has recovered $95,677,126 for the Receivership Estate.

The Receiver maintains a Truist (previously BB&T) account in the name of TCA Fund Management Group Corp. This account is a general lockbox to receive funds deposited from various loan portfolio clients and is maintained in case additional funds are received from portfolio clients, even though the Receiver and his Retained Professionals have directed loan portfolio clients to make payments to the Receivership accounts at Axos Bank. The TCA Fund Management Group Corp. account at Truist, with a balance of $656,049, was transferred to a Receiver's Axos bank account on March 30, 2023, and currently has a balance of $0.00.

### B.    Special Purpose Vehicles

The Receivership's assets include businesses that Master Fund owns (typically as 100% member/manager) through SPVs. Master Fund typically began its relationship with these businesses by providing secured debt financings. When the borrower failed to meet its obligations, Master Fund sued and ultimately executed an Article 9 UCC foreclosure sale of the borrower's assets to a newly formed operating entity owned by Master Fund.

Below is a summary of the current SPVs' status:

1.      **SPV – Domestic**[6]

**Pivot Energy aka TCA Microgrid, LLC.** The sale of TCA Microgrid assets concluded during the Fifth Reporting Period. [ECF No. 163 at p. 6]. The sale of TCA Microgrid netted the Receivership Estate almost $52 million. The Receiver continued to address post-closing tax issues relating to TCA Microgrid during the Eighteenth Reporting Period.

**Transmarine.** During the Eighteenth Reporting Period, Transmarine continued to operate on a positive basis without the need for capital infusion, though cash flow is tight due to uneven work volume and a recent increase in required working capital. The Receiver and his consultant, Mark Iammartino of DSI, spent time assisting the company with operational issues and exploration of strategic alternatives. Those opportunities remain difficult given the IRS' position that Transmarine is indebted to it for taxes. The Receiver and his professionals continue to work with Transmarine to resolve the tax issue, which the IRS is not actively advancing. The Receiver continues to explore strategic options to maximize value but does not currently have any parties with serious interest in the Company.

2.      **SPV – International**

**JLE Holdings, LTD/Zeecol Finance LLC**. SPV Zeecol Finance LLC is the record owner of JLE Holdings, LTD, a New Zealand company in the electrical contracting business in New Zealand. A prior owner of JLE asserted a significant ownership interest in JLE and Zeecol and filed a lawsuit in New Zealand seeking legal determination and enforcement of such purported ownership interest. As discussed previously, the Receiver successfully resolved the litigation following two mediations, and the Court approved the settlement. [ECF Nos. 218, 227].

---

[6] For a detailed analysis of each asset and its position within the portfolio, please see Section 6.B of the First Report.

During the Fourteenth and Fifteenth Reporting Periods, the Receiver and his professionals continued working to close upon a share purchase transaction. Ultimately, however, the purchaser was unable to close on the agreed upon terms. On the advice of the New Zealand professionals and the Receiver's consultant at DSI, a renewed sales process will be initiated in the future. During the Sixteenth Reporting Period, the Receiver received a written offer to purchase the company from the company's management team. The Receiver and his professionals responded to that offer and are awaiting further indication of interest from the management team. A transaction is not imminent, however.

Additionally, the Receiver continued to work with counsel in New Zealand and ASB Bank to restructure how certain bonding activity and related guarantees are administered. ASB Bank provides surety bonds on behalf of JLE to ensure the completion of certain infrastructure construction projects undertaken by JLE. To collateralize the bonds, JLE has significant cash deposits in restricted bank accounts at ASB. To facilitate the eventual sale of JLE, which is expected to result in some timing issues regarding the release of the cash collateral upon replacement or expiration of the bonds, the Receiver is working to move both the cash collateral and the related guarantees to an ASB account with Zeecol. There is no incremental exposure to TCA, but moving the funds to Zeecol will protect TCA's residual interest in the collateral. During the Sixteenth Reporting Period, accounts were opened at ASB with the Receiver as signatory. However, movement of the funds has not yet occurred due to the pending management purchase discussions. Trading conditions materially weakened during the most recent Reporting Periods due to macroeconomic factors in the local New Zealand economy, creating unfavorable conditions for a management or third-party purchase effort. The Receiver will continue holding and monitoring the Company pending future strengthening of the economy and Company

performance.

**3.     SPV – Real Property and Other Assets**

**Lexington, North Carolina Real Property.** TCA Share Holdings, LLC (f/k/a TCA MCA, LLC (NV)), is the titleholder of certain real property located at 419 Salem Street, Lexington, North Carolina. Master Fund is the 100% equity owner of TCA Shareholdings, LLC. During this Period, the Receiver continued to maintain the property and work on maximization of value.

**C.     Loan Portfolio**

**1.     Sale of the Loan Portfolio**

The Receiver engaged B. Riley to facilitate the sale of the loan portfolio. B. Riley prepared marketing materials and sent solicitations to its extensive network of financial professionals and potential purchasers to participate in the sales process. During this Reporting Period, prospective purchasers continued to conduct due diligence on the loan portfolio, and B. Riley continued to market the portfolio.

**2.     Continuing Overview of the Loan Portfolio**

As discussed previously, the Fund prospectuses, annual financial audits, and monthly and other reports suggested that one of the Receivership's most substantial and valuable assets were performing loans. As explained in prior reports, however, the Receiver and his professionals discovered that there were only two performing loans, and two others that were paying regularly, but far less than the monthly amount due under their loan agreements.

Given the upcoming sale of the loan portfolio, this Report only discusses loans for which there has been some notable activity or status to report during the Eighteenth Reporting Period.

<u>**Pacific Ventures**</u>
Loan Origination:      June 2017
Loan Principal:         $2,399,966
Loan Interest:          $821,088

14

| Total Balance: | $3,221,054 |
| Last Payment: | March 18, 2022 |
| Status: | Communicating and Making Partial Payments |

Prior to the Receiver's appointment, TCA permitted PACV to pay only $10,000 (not the required $75,000) per month, to avoid a default so PACV could attempt to complete a capital raise. During this Reporting Period, the Receiver instructed B. Riley to include PACV as part of the portfolio being actively marketed for sale.

## D.    Third Party Litigation

The Receiver previously negotiated, and the Court approved, a Litigation Coordination Agreement with counsel for Todd Benjamin International, Ltd. and Todd Benjamin, individually and on behalf of all others similarly situated (collectively, the "Class Plaintiffs"), to jointly pursue claims against third parties (the "Common Targets") relating to the financial affairs of TCA and related Receivership Entities. The Litigation Coordination Agreement provides for the Receiver and the Class Plaintiffs, as well as their respective counsels, to combine efforts in joint litigation, with any recoveries being distributed through the Receivership. [ECF No. 285, 295].

In late 2022, the putative Class Plaintiffs filed an amended complaint and demand for jury trial, seeking relief against Grant Thornton International Ltd. ("GTIL"), Grant Thornton Cayman Islands ("GT Cayman"), and Grant Thornton Ireland ("GT Ireland,"), Bolder Fund Services (USA), LLC ("Bolder USA"), and Bolder Fund Services (Cayman), Ltd. ("Bolder Cayman"). Defendants filed motions to dismiss and Class counsel filed its opposition in May 2023.

In June 2023, Defendants filed their reply in support of their motion to dismiss, and in July 2023, the court (Scola, J.) granted in part and denied in part Defendants' motions to dismiss, resulting in claims against GT Cayman and GT Ireland being allowed to proceed. In October 2023, class counsel filed a second amended class action complaint, which added two additional class

representatives as named plaintiffs. On November 7, 2023, Defendants submitted their answers and affirmative defenses to the second amended complaint. Thereafter, in January 2024, GT Cayman filed a motion for judgment on the pleadings, and GT Ireland moved to adopt/join GT Cayman's motion for judgment on the pleadings. Class Plaintiffs filed a response in opposition to the motion for judgment on the pleadings on January 26, 2024. That motion remains pending as discussed, *infra*.

On October 19, 2023, the Receiver filed his suit against TCA's Fund administrators, Bolder USA, Bolder Cayman, and Bolder Holdings. Venable is representing the Receiver in this matter on a contingency fee basis. Defendants ultimately filed a motion to dismiss the complaint and the parties attempted to resolve the matter through mediation without success. On August 27, 2024, the court entered an order granting in part and denying in part the Bolder Defendants' motion to dismiss. [*Id.*, ECF No. 55]. The court granted the motion to dismiss without prejudice as to two Bolder Defendants and denied it as to a third Bolder Defendant.

During this Reporting Period, the Receiver continued to prosecute the action including by (1) setting depositions, and (2) by filing a motion seeking reconsideration of the court's dismissal of two Bolder entities, including Bolder USA, as constituting a manifest error on September 24, 2024. Bolder filed an opposition and the Receiver thereafter submitted a reply memorandum on October 25, 2024. Accordingly, the Receiver's motion is fully briefed and awaits the court's ruling.

On January 17, 2024, the Receiver also filed suit against TCA's former auditors, Grant Thornton Cayman Islands and Grant Thornton Ireland in the U.S. District Court for the Southern District of Florida. Venable is also representing the Receiver in this matter on a contingency fee basis. On March 6, 2024, Grant Thornton Cayman and Grant Thornton Ireland filed their joint motion to dismiss and to compel arbitration. Since then, the Receiver and putative Class Plaintiffs

(with their respective counsel), have attempted to settle all suits against Grant Thornton. This has included two full-day mediations with assistance from an experienced former judge, the Honorable Michael Hanzman, serving as mediator. Following the second mediation, the parties notified the respective district courts that plaintiffs had reached an agreement in principle with Grant Thornton Cayman and Grant Thornton Ireland.

As noted in the last Report, demands asserted by the JOLs impeded the final settlement. During this Eighteenth Reporting Period, the Receiver, the Grant Thornton parties, and the JOLs made significant progress in resolving outstanding issues. The Receiver hopes to submit an agreement for approval prior to the next Report.

### E.     Litigation Initiated by Master Fund Against Borrowers

The Receiver and his counsel, Venable, continued to monitor and prosecute pending litigation matters involving the Receivership Entities, with a goal toward reaching a favorable resolution or to final judgment.

Given the upcoming sale of the loan portfolio, this Report only discusses those litigation matters for which there has been some notable activity or status to report during the Eighteenth Reporting Period.

- ***TCA Global Credit Master Fund, L.P. v. Independent Charter Academy Network, LLC, EdisonLearning, Inc., Edison Receivables Company LLC, Edison Schools, Inc., Edison Learning Limited, Bridgescape Learning, LLC, Provost Systems, Inc., Theodore Roosevelt College, Career Academy, Inc., Provost International, Inc., Learnnow, Inc., Thomas M. Jackson*, Broward County Circuit Court, Case No. CACE 18-016887 (09)**

In January 2017, Master Fund loaned $8.1 million to borrower EdisonLearning, Inc., an education services company that manages and operates public charter schools and provides online learning services in multiple states. The borrower and its principal defaulted on the loan. After Master Fund filed suit to foreclose on the loan, on June 25, 2019, the parties executed a settlement

agreement, by which the debtors agreed to market and sell the EdisonLearning E-Learning Business by June 25, 2020, for at least $10.5 million, to be paid to Master Fund.

During the Eighth Reporting Period, the Receiver entered into an amendment of the settlement agreement with EdisonLearning, which the Court approved. [ECF Nos. 250, 251]. The Amendment provided that in the event of a default the Receiver may pursue all of his rights and remedies under the original $10.5 million settlement. During the Ninth Reporting Period, EdisonLearning defaulted upon its obligations under the Amendment.

Previously, the Receiver and EdisonLearning entered into a Second Amendment to Settlement Agreement ("Second Amendment") which the Court approved. *See* [ECF Nos. 458, 460]. Under the Second Amendment, EdisonLearning is required to pay the Receiver a total of $6,500,000 in three installments. The first two installments of $4,174,000 and $1,000,000 were made. The final payment, in the amount of $1,326,000, is due by the end of June 2025. If EdisonLearning were to default, the amount due to the Receiver would increase and the Receiver would take control of EdisonLearning's sales process.

- ***TCA Global Credit Master Fund, L.P. v. Groupe Mercator Transport US, Inc., 8894132 Canada, Inc., 8895791 Canada, Inc., d/b/a Utc Air Ground, and Jean-Pierre Apelian***, **Broward County Circuit Court, Case No. CACE-19-000406 (14)**

In January 2019, Master Fund filed a complaint in Florida state court against the borrower and guarantors, based on their defaults on a loan under a series of transactions. Master Fund provided financing to Groupe Mercator, a Canadian freight-forwarding firm, to pay off Mercator's lenders. In connection with that transaction, Master Fund allegedly arranged for another Fund borrower, David Fuselier, to operate the Groupe Mercator business through two new companies in Canada. The loan amount was $2.6 million; the current loan payoff, with interest, is $3.1 million. Receiver's counsel has learned that Groupe Mercator Transport is an active company, with annual

sales of $5.78 million.

The defendant guarantors filed counterclaims against Master Fund and against former Chief Portfolio Manager, Donna M. Silverman. Defendants asserted that Ms. Silverman committed fraud in presenting Fuselier as trustworthy when she knew otherwise. Defendants also claimed that Master Fund charged an excessive rate of interest in violation of the Nevada High Interest Lending Statute.[7] However, Master Fund alleged that Fuselier diverted funds owed to it, and directed Robert Gagnon, manager of the new companies, 8894132 Canada, Inc. and 8895791 Canada, Inc. (the "Numbered Entities"), to withhold financial reporting, and not to deposit revenues into the lockbox as required in the loan agreements. Fuselier and Gagnon then allegedly moved all the assets of the Canadian Numbered Entities, which were essentially formed to collect and hold Mercator's receivables to another company, ATL Canada, Inc., which is now conducting the same business.

In September 2021, the trial court entered judgment against Groupe Mercator for $4,399,475.57. On September 10, 2021, the court also granted the Receiver's motion for summary judgment as to liability against the guarantors, and in October, the court entered a judgment in the amount of $1,500,000 against Apelian, and in the amount of $4,392,640.24 against the remaining guarantor entities, jointly and severally. The Receiver also obtained an order granting its motion for attorneys' fees as a result of defendants' filing of a bad faith affidavit in opposition to the Receiver's Motion for Summary Judgment.

On November 18, 2021, the guarantors filed a notice of appeal of the final judgment and subsequently filed their appeal brief. Thereafter, the Receiver submitted its answer brief to defendants' appeal brief.

---

[7] The controlling loan documents require application of Nevada law.

On December 29, 2022, the Fourth District Court of Appeal for the State of Florida affirmed the state court's final judgment. Appellants did not file a motion for post-opinion relief by the January 30, 2023 deadline. During this Reporting Period, on March 27, 2023, the Receiver's Canadian counsel filed an Application for Recognition and Enforcement of a Foreign Decision in Canada. On May 18, 2023, a hearing was held before a judge of the Superior Court of Quebec who set the matter for a 1-day "trial" on October 10, 2023, on an expedited basis. On November 14, 2023, following a hearing, the court denied foreign judgment recognition, and the Receiver through Canadian counsel filed a notice of appeal. During the Sixteenth Reporting Period, the Receiver's Canadian counsel filed an initial appellate brief and appellee Apelian filed his response brief as well.

During this Eighteenth Reporting Period, the Court of Appeal confirmed that the hearing will take place on March 19, 2025 before a panel of three judges. The Receiver understands that that the appellate court is likely to reverse the lower court and order it to recognize the Florida judgment.

## VII.   THE RECEIVER'S OBSERVATIONS

The Receiver's stated priorities for the Eighteenth Reporting Period included prosecution and resolution of the pending third-party litigation claims against the Grant Thornton and Bolder entities and objections to the settlement of the directors' and officers' insurance policy; continued work toward resolving impediments to distribution; preserving and maximizing value from Receivership Assets, including Transmarine and JLE; and negotiation and collection upon Net Winner claims.

The Receiver made significant progress on the stated priorities during this Reporting Period.

With respect to third party litigation against Fund auditors Grant Thornton Ireland, Grant

Thornton Cayman, the Receiver and his counsel at Venable, working with the Class Plaintiffs and their counsel, as well as with the JOLs and their counsel significantly progressed negotiations that the Receiver expects to result in the announcement and submission of a final proposed settlement for approval during the next Reporting Period.

The Receiver, through his counsel, also aggressively progressed the case against the Bolder entities, including by setting depositions and filing a motion for reconsideration of the court's order dismissing some claims, as well as a reply memorandum to Bolder's opposition.

The Receiver also made progress toward an initial distribution, including by negotiating third party bids to assist with the distribution process, and by continuing to make progress on obtaining necessary identification and contact information for certain investors.

The Receiver also negotiated certain Net Winner claims and worked with the JLE and Transmarine SPVs on operational and financial matters to assist in maintaining and maximizing their value.

## VIII.  CONTINUING WORK

During the next Reporting Period, the Receiver's priorities will continue to include resolution of the pending third-party litigation claims and objections to the TCA directors' and officers' insurance policy settlement. Additionally, the Receiver will continue to prepare for the upcoming first interim distributions. The Receiver will also continue to work toward preserving and maximizing value from remaining Receivership Assets, including Transmarine, JLE, the sale of the estate's loan portfolio, and collection upon Net Winner claims.

Dated: November 20, 2024

Respectfully submitted,

Jonathan E. Perlman, Esq.
Florida Bar No. 773328
JEPerlman@venable.com
*Receiver for the Receivership Entities*

-and-

VENABLE LLP
801 Brickell Avenue, Suite 1500
Miami, Florida 33131
Telephone: (305) 349-2300

By:   /s/  Elizabeth G. McIntosh
     Elizabeth G. McIntosh, FBN 1011555
     emcintosh@venable.com
     Gregory M. Garno, FBN 87505
     ggarno@venable.com
     *Attorneys for Jonathan E. Perlman, Esq.,*
     *Receiver for the Receivership Entities*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 20, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified via transmission or Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

     /s/  Elizabeth G. McIntosh
     Attorney

**SERVICE LIST**
*Securities and Exchange Commission v. TCA Fund Management Group Corp., et al.*
**Case No. 20-Civ-21964-CMA**

Paul Joseph Battista, Esq.
pbattista@venable.com
Michael A Friedman, Esq.
mfriedman@venable.com
Gregory M. Garno, Esq.
ggarno@venable.com
John H. Genovese, Esq.
jgenovese@venable.com
Brett M. Halsey, Esq.
bhalsey@venable.com
Heather L. Harmon, Esq.
hharmon@venable.com
Eric Jacobs, Esq.
ejacobs@venable.com
Elizabeth G. McIntosh, Esq.
emcintosh@venable.com
Jonathan Perlman, Esq.
jperlman@venable.com
VENABLE LLP
801 Brickell Avenue, 15th Floor
Miami, Florida 33131
*Attorneys for Jonathan E. Perlman,*
*Receiver*

Stephanie N. Moot, Esq.
moots@sec.gov
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
*Attorneys for Plaintiff Securities and*
*Exchange Commission*

James J. Webb, Esq.
jwebb@mitrani.com
Mitrani, Rynor, Adamsky & Toland, P.A.
1200 Weston Road, PH
Weston, FL 33326
*Attorneys for Interested Parties Krystal*
*Lazares-Scaretta, Robert A. Scaretta and*
*American Gold Rush, LLC*

Andrew Fulton , IV, Esq.
andrew@kelleylawoffice.com

Brian S. Dervishi, Esq.
bdervishi@wdpalaw.com

Craig Vincent Rasile
crasile@mwe.com

Gerald Edward Greenberg, Esq.
ggreenberg@gsgpa.com

Gregg Alan Steinman
gsteinman@sflp.law

Mark David Bloom, Esq.
mark.bloom@bakermckenzie.com

Martha Rosa Mora, Esq.
mmora@arhmf.com

Michael David Heidt, Esq.
mheidt@aol.com

Barry MacEntee, Esq.
bmacentee@hinshawlaw.com
Barbara Fernandez, Esq.
bfernandez@hinshawlaw.com
Peter Sullivan, Esq.
psullivan@hinshawlaw.com
Hinshaw & Culbertson LLP
151 North Franklin Street, Suite 2500,
Chicago, IL 60606
*Attorneys for Grant Thornton Ireland*

John E. Lawlor, Esq.
jlawlor@johnelawlor.com
129 Third Street

CASE NO. 20-CIV-21964-CMA

Mineola, NY 11501
*Attorney for Patrick Primavera*
John D. Mullen, Esq.
john.mullen@phelps.com
Michael S. Hooker, Esq.
michael.hooker@phelps.com
PHELPS DUNBAR LLP
100 South Ashley Drive, Suite 2000
Tampa, Florida 33602-5315
*Grant Thornton Cayman Islands*