**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-CIV-21964-CMA**

SECURITIES     AND     EXCHANGE
COMMISSION,

      Plaintiff,

v.

TCA   FUND   MANAGEMENT   GROUP
CORP., *et al.*,

      Defendants.

_____/

**RECEIVER'S MOTION TO**
**(I) PRELIMINARILY APPROVE SETTLEMENT AMONG**
**RECEIVER, CLASS PLAINTIFFS, GRANT THORNTON, JOLS,**
**AND FORMER OFFICERS AND DIRECTORS; (II) APPROVE FORM**
**AND CONTENT OF NOTICE, AND MANNER AND METHOD OF SERVICE**
**AND PUBLICATION; (III) SET DEADLINE TO OBJECT TO APPROVAL OF**
**SETTLEMENT; AND (IV) SCHEDULE A HEARING**

Jonathan E. Perlman, Esq., court-appointed Receiver (the "**Receiver**") over Defendants

TCA Fund Management Group Corp. and TCA Global Credit Fund GP, Ltd., and Relief

Defendants TCA Global Credit Fund, LP, TCA Global Credit Fund, Ltd., and TCA Global Credit

Master Fund (collectively the "**Receivership Entities**"), by and through undersigned counsel,

hereby files this motion to (i) preliminarily approve a settlement agreement among: (1) the

Receiver, not individually but solely in his capacity as the court-appointed Receiver; (2) putative

class representatives Todd Benjamin International, Ltd., Todd Benjamin, Zbynek Dvorak, and

Fawzi Bawab (the "**Class Plaintiffs**"); (3) Grant Thornton Cayman Islands ("**GT Cayman**") and

Grant Thornton Ireland ("**GT Ireland**" and with GT Cayman, collectively "**Grant Thornton**");

(4) Robert Press ("**Press**"), Alyce Schreiber ("**Schreiber**"), William Fickling III ("**Fickling**"),

Tara Antal ("**Antal**"), Bruce Wookey ("**Wookey**"), and Bernard Sumner ("**Sumner**") (collectively the "**Former Officers and Directors**"); and (5) Eleanor Fisher and Joel Edwards, not individually but solely in their capacities as joint official liquidators of TCA Global Credit Fund, Ltd (the, "**JOLs**"); (ii) approve the form and content of notice, and manner and method of service and publication of this motion and related orders; (iii) set a deadline to object to the settlement; and (iv) schedule a final hearing to approve the settlement.

## I.     INTRODUCTION

Consistent with the Receiver's powers and duties authorized by this Court in his appointment, the Receiver agreed to enter into a Settlement Agreement and Release (the "**Settlement Agreement**"), a copy of which is attached hereto as **Exhibit "A"** between the Receiver, the Class Plaintiffs, Grant Thornton, the JOLs, and the Former Officers and Directors.[1] In the proposed settlement, if certain conditions are met, as set forth in the Settlement Agreement (a) Grant Thornton shall cause its insurers, collectively to pay the Receiver $23,050,000.00 within 30 days of the effective date of the Settlement Agreement in exchange for a release of the Receiver's Claims against Grant Thornton; (b) the Former Officers and Directors shall cause AIG Claims Inc. and AIG Europe, collectively, inclusive of their respective affiliated entities ("**AIG**") to pay the Receiver $3,449,125 within 30 days of the effective date of the Settlement Agreement in exchange for a release of the Receiver's Claims against the Former Officers and Directors and AIG; and (c) the Receiver shall pay the JOLs the sum of $2,400,000 within 10 days of the receipt of the payments from Grant Thornton in exchange for the JOLs' release of Grant Thornton.

After undertaking a comprehensive settlement and negotiation process, the Receiver and his retained professionals extensively negotiated the terms of the Settlement Agreement, which the

---

[1] The Parties are currently in the process of executing the Settlement Agreement.  Upon completion of that process, the Receiver will file a fully executed version of the Settlement Agreement with the Court.

Receiver believes is in the best interest of the Receivership Estate. As described below, the Receivership's claims over Grant Thornton and the Former Officers and Directors are Receivership Property. The Receiver engaged in a thorough and deliberate mediation and subsequent negotiations in good faith and at arm's length, without fraud or collusion, to maximize the value of such claims to the Receivership Estate. As such, the Receiver properly exercised his authority and business judgment in accepting the terms of the Settlement Agreement, with the goal of maximizing value to the Receivership Estate for the ultimate benefit of the investors.

By way of this Motion, the Receiver respectfully requests that this Court preliminarily approve the Settlement Agreement and entry of an Order in the form attached as **Exhibit "B"** (the "**Proposed Preliminary Order**"). Moreover, this Motion respectfully requests that this Court approve the form and content of the notices, attached hereto as **Exhibits "C" and "D"** (the "**Notice**"), and the manner and method of service and publication of this Motion to interested parties, as well as set a deadline for persons to object to the settlement and releases. Lastly, the Receiver, by way of this Motion, respectfully asks this Court to schedule a final hearing. As set forth more fully below, the relief requested herein is fair, equitable, and in the best interests of the Receivership Entities and all other interested parties and should be granted.

## II.      RELEVANT BACKGROUND

### A.      The Appointment Order and the Receiver's Authority

On May 11, 2020, the Securities and Exchange Commission ("SEC") filed its Complaint for Injunctive Relief against TCA Fund Management Group, Corp., TCA Global Credit Fund GP, Ltd. (collectively, "**Receivership Defendants**"), and TCA Global Credit Fund, LP, TCA Global Credit Fund, Ltd., and TCA Global Credit Master Fund, LP (collectively, "**Relief Defendants**") (Receivership Defendants and Relief Defendants are collectively referred to as "**Defendants**") in

this action (the "**SEC Action**"). [ECF No. 1]. The SEC also filed an Expedited Motion for Appointment of Receiver. [ECF No. 3].

In connection with the Complaint and with consent of the Defendants, on May 11, 2020, this Court entered a Judgment of Permanent Injunction and Other Relief [ECF No. 7] against the Defendants and an order granting the SEC's Unopposed Expedited Motion for Appointment of Receiver [ECF No. 5] (the "**Appointment Order**"). Thereafter, on May 15, 2020, the Receiver filed an Emergency Motion to Confirm and Expand the Receivership to include TCA Global Lending Corp ("**Lending Corp.**"). *See* [ECF No. 15]

The Appointment Order appointed Jonathan E. Perlman, Esq., a shareholder at the law firm Genovese, Joblove & Battista, P.A. ("**GJB**"), as permanent Receiver over the Receivership Entities. Thereafter, on December 22, 2022, this Court granted the Receiver's Unopposed Motion for Authorization to Retain and Substitute Venable LLP as Counsel for the Receiver. [ECF Nos. 324, 325]. Accordingly, effective January 1, 2023, the Receiver, as well as his counsel, became part of Venable LLP, and the Receiver retained Venable LLP as his counsel. Venable LLP was substituted for Genovese Joblove & Battista, P.A. [*Id.*].

Pursuant to the Appointment Order, the Receiver has the following general powers and duties:

A. To use reasonable efforts to determine the nature, location and value of all property interests of the Receivership Entities, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, **claims**, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Entities own, possess, have a beneficial interest in, or control directly or indirectly ("Receivership Property" or, collectively, the "Receivership Estates");

\*\*\*

E. To take any action which, prior to the entry of this Order, could have been taken

4

> by the officers, directors, partners, managers, trustees and agents of the Receivership Entities.

I. To bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging Receiver's duties;

[*Id.* at § II ¶ 7(A), (E), (I)] (emphasis added). In this order, this Court took "exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of the Receivership Entities," *id.* at ¶ 1, and charged the Receiver to, among other things, "develop a plan for the fair, reasonable, and efficient recovery and liquidation of all remaining, recovered, and recoverable Receivership Property," *id.* ¶ 46.

Pursuant to his authority under the Order, the Receiver "may, without further Order of the Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property." [*Id.* at § IX ¶ 31]. Upon his appointment, the Receiver took immediate action to secure all Receivership Property. One example of such Receivership Property is the Receivership's alleged claims of improper conduct asserted against Grant Thornton and the Former Officers and Directors.

### B.     The Class Action

On April 30, 2020, Todd Benjamin International, Ltd. and Todd Benjamin (individually and on behalf of an alleged class) filed a lawsuit against TCA Fund Management Group Corp., Press, Schreiber, Fickling, Thomas Day, Patrick Primavera, Donna Silverman, and Antal for rescission, breach of fiduciary duty, and negligent misrepresentation in the action styled *Todd Benjamin Int'l, Ltd. v. TCA Fund Mgmt. Group Corp.*, Case No. 1:20-CV-21808-RNS (S.D. Fla.) (the "**Class Action**"). The alleged class consists of: "All investors who purchased or otherwise

held a beneficial interest in one or more of the TCA funds on January 21, 2020" (the "**Alleged Class**"). On October 4, 2023, the original plaintiffs in the Class Action filed a Second Amended Complaint asserting claims against Grant Thornton which also clarified the scope of the proposed class and added proposed class representatives Zbynek Dvorak and Fawzi Bawab. The putative class consists of: "All investors who held a beneficial interest in [TCA Global Credit Master Fund L.P.] on January 21, 2020" (the "**Putative Class**"). Upon his appointment, the Receiver identified 1,485 investors in the Receivership Entities (as of his July 15, 2022 Status Report [ECF No. 281 at ¶5]), whom the Receiver and the Class Plaintiffs presently believe to include all the known investors in the Putative Class, and to whom the Receiver will provide notice in this action.

### C.  **D&O Settlement**

By way of background, AIG issued an Investment Management Insurance Policy, Policy No. LF32000100 (the "**AIG Policy**"), with a policy limit of $5 million, in the aggregate, covering certain claims made and reported against Receivership Entities and their directors and officers during the policy period from September 1, 2010 to August 31, 2011. Not long after his appointment, on August 27, 2020, by letter titled "Notice of Claim, Demand for Tender of Insurance Policy Limits & Assertion of Claims Under Policies" (the "**Receiver Letter**"), the Receiver, through his counsel, alleged improper conduct committed by the Former Officers and Directors. Then, by letter dated February 28, 2022 and titled "Notice of Claim, Demand for Tender of Insurance Policy Limits and Assertion of Claims Under Policies" (the "**Class Letter**"), the Class Plaintiffs, through their counsel, alleged improper conduct committed by the Former Officers and Directors. The Former Officers and Directors denied any and all fault and any liability to the Receiver, the Receivership Entities, or the Class Plaintiffs with respect to the Receiver Letter and Class Letter and sought defense and indemnity coverage under the AIG Policy for the claims set forth in both the Receiver Letter and Class Letter.

Instead of undergoing costly litigation, the Receiver, the Class Plaintiffs, and the Former Officers and Directors mediated the case before Howard Tescher on March 23 and April 13, 2022. As a result of those mediations and subsequent negotiations, the parties agreed that it was in the best interests of all involved to amicably resolve all claims asserted against the Former Officers and Directors. The Receiver entered a Settlement Agreement with the Former Officers and Directors pursuant to which the Former Officers and Directors agreed to cause AIG to pay $3,682,007.78 under the AIG Policy to the Receiver in exchange for release of the claims that were or could be asserted against the Former Officers and Directors in the SEC Action, the Class Action, or the Receiver Letter. [ECF No. 369-1] ("**D&O Settlement**").

On August 29, 2023, the Receiver filed a Motion for (i) Approval of Settlement among Receiver, Class Plaintiffs, and the Former Officers and Directors; (ii) Approval of Form, Content, and Manner of Notice of Settlement and Bar Order; (iii) Entry of Bar Order; and (iv) Scheduling a Hearing; with Incorporated Memorandum of Law. [ECF No. 369] ("**D&O Motion**"). The D&O Settlement was contingent upon the Receiver obtaining the entry of a bar order prohibiting any person or entity, *inter alia*, commencing or prosecuting any claim against the Former Officers and Directors (or AIG in connection with the AIG Policy) relating to (i) the claims released in the D&O Settlement; (ii) the events or occurrences underlying the claims or allegations in the SEC Action or claims or allegations that could have been brought in the SEC Action; or (iii) the events or occurrences underlying the claims or allegations in the Class Action, or claims or allegations that could have been brought in the Class Action (the "**D&O Bar Order**"). [ECF No. 369-4].

If the Receiver failed to secure the Bar Order, the "Settlement Agreement w[ould] terminate and the entire Settlement w[ould] be null and void[,]" unless the parties protected by the Bar Order exercised their discretion to waive or renegotiate the condition. [*Id*. 6-7]. On August 31, 2023, this Court preliminarily approved the D&O Settlement and established procedures for final

approval of the D&O Settlement and entry of the Final Approval and D&O Bar Order. [ECF No. 371].

Grant Thornton filed objections to the D&O Settlement, specifically objecting to the entry of the D&O Bar Order. [ECF Nos. 374, 377]. At the time of the objections, Grant Thornton asserted affirmative defenses in the Class Action implicating the Former Officers and Directors. Additionally, GT Ireland asserted "claims of fraud, intentional, fraudulent, and negligent misrepresentation, contribution, equitable contribution and common law indemnification" in the courts of the Cayman Islands against the Former Officers and Directors.

On December 21, 2023, entered an order approving the D&O Settlement but sustained Grant Thornton's objections and denied the D&O Bar Order as it relates to Grant Thornton. [ECF No. 420]. Accordingly, on January 19, 2024, the Receiver filed a notice advising the Court that the D&O Settlement could not be effectuated because the Former Officers and Directors were unwilling to waive the requirement that the D&O Bar Order be approved and entered as proposed. [ECF No. 424].

**D.  The Receiver's Claims against Grant Thornton**

On January 17, 2024, the Receiver filed a lawsuit asserting three counts, each under Cayman Islands law, against Grant Thornton: (1) breach of duty, (2) dishonest assistance, and (3) breach of contract. *See Perlman v. Grant Thornton Cayman Islands, et al.*, Case No. 1:24-cv-20188-KMM (the "**Receiver Action**"). On March 25 and April 29, 2024, Grant Thornton, the Receiver, and the Class Plaintiffs participated in a joint mediation before the Honorable Michael A. Hanzman (Ret.), as mediator.

At the March 25, 2024 mediation, GT Cayman, the Receiver and the Class Plaintiffs reached a settlement in principle, which was expressly contingent on GT Ireland reaching a settlement with the Receiver and the Class Plaintiffs. [Receiver Action, ECF No. 26-1]. GT

Ireland, the Receiver, and the Class Plaintiffs also reached a settlement in principle at the April 29, 2024 mediation as noted in the Mediator's Report. [Receiver Action, ECF No. 30-1]. The settlement in principle was expressly contingent on several terms, including providing to Grant Thornton global peace, the definition of which was extensively negotiated by Grant Thornton, the Receiver, and the Class Plaintiffs.

### E.  **JOLs**

On April 1, 2020, a creditor and investor in TCA Global Credit Fund, Ltd. ("**Feeder Fund Ltd.**"), filed a petition in the Financial Services Division of the Grand Court of the Cayman Islands ("Cayman Court") under the Cayman Islands Companies Act (2020 Revision) (the "**Cayman Companies Act**") with Cause Number FSD 51 of 2020 (the "**Cayman Proceedings**"), requesting that the Cayman Court order the winding up and liquidation of Feeder Fund Ltd. and for the appointment of the JOLs. Notwithstanding this Court's Appointment Order, on May 13, 2020, the Cayman Court entered an order appointing Eleanor Fisher and Tammy Fu as Joint Official Liquidators over Feeder Fund Ltd and authorizing them to wind up Feeder Fund Ltd under Cayman law. Ms. Fu has subsequently been succeeded in that role by Joel Edwards.

Nine months later, on February 16, 2021, the JOLs filed a Chapter 15 petition in U.S. bankruptcy court seeking recognition of the Cayman Islands proceeding as a "foreign proceeding." [Case No. 21-11513-RAM, ECF No. 1, 7].  By stipulated motion, the Receiver and JOLs agreed to this Court withdrawing the bankruptcy reference of the Chapter 15 petition and entering an order granting the JOLs limited rights to appear in the SEC Action. [Case No. 21-21905-CIV, ECF No. 1].  The stipulated motion and "Agreed Recognition Order" entered June 4, 2021, recognized the Cayman proceeding as a "foreign nonmain proceeding" under 11 U.S.C. §1517(b)(2) and the JOLS as the "duly appointed foreign representatives of the Debtor" in the foreign nonmain proceeding. [Case No. 21-21905-CIV, ECF No. 8] ("**Chapter 15 Order**"). The Chapter 15 Order imposed a

meet-and-confer requirement upon both parties prior to seeking "any relief in the [SEC] Case or the Chapter 15 Case" and further stated that "nothing contained herein shall amend or modify the [Appointment] Order" or  "impair or abridge the ability of . . . the Receiver to appear and seek relief in courts outside the United States . . . in furtherance of the rights, duties and responsibilities imposed upon him . . . ."

Prior to the April 29, 2024 mediation, on April 18, 2024, the JOLs sent Grant Thornton correspondence reserving their rights to assert claims against them arising from their work on financial statement audits of Feeder Fund Ltd. On May 7, 2024, after the April 29, 2024 mediation, the JOLs sent additional correspondence to GT Cayman and GT Ireland reasserting their reservation of rights.

Thus, after the April 29, 2024 mediation, Grant Thornton, the Receiver and Class Plaintiffs engaged in lengthy subsequent negotiations on the terms of a written settlement agreement that would accomplish the required global peace. Accordingly, as a result of lengthy subsequent negotiations, the Parties agreed to the execution of a written settlement agreement and entry of orders providing to Grant Thornton global peace whereby Grant Thornton would be comprehensively and finally released from all liability arising from their work on the financial statement audits of the Receivership Entities including the claims asserted by the Receiver and the Class Plaintiffs, potential claims of the Former Officers and Directors, and the claims reserved by the JOLs on behalf of TCA Global Credit Fund, Ltd. The Parties also agreed that is in the best interest of all involved to resolve the claims asserted by and among the Parties to the Settlement Agreement, including Grant Thornton's objections to the D&O Settlement.

F. **Material Terms of the Settlement Agreement**

During two mediations and with many additional months of negotiations involved, the Receiver and his retained professionals, in conjunction with the Class Plaintiffs, negotiated a

comprehensive Settlement Agreement[2] with Grant Thornton, the JOLs, and the Former Officers and Directors. *See* Exhibit "A". As set forth in the Settlement Agreement, (i) within thirty (30) days of the Effective Date (as defined in the Settlement Agreement), and after payment of all accrued but as yet unpaid defense costs less a reserve of $100,000.00 for continuing defense costs, the Former Officers and Directors shall cause AIG to pay to the Receiver $3,449,125 (the " **Former Officers and Directors Settlement Payment**"); (ii) within thirty (30) days of the Effective Date, GT Cayman shall cause its insurer to pay to the Receiver the sum of $3,000,000.00 (the "**GT Cayman Payment**") and GT Ireland shall cause its insurers to pay to the Receiver the sum of $20,050,000.00 ("**GT Ireland Payment**") (together the "**GT Settlement Payments**"); (iii) within ten (10) days of the receipt of the GT Settlement Payment, the Receiver shall cause to be paid to the JOLs the sum of $2,400,000 (the "**JOLs Payment**"); and (iv) within ten (10) days of the Effective Date, the Receiver shall cause the Receiver Action to be dismissed with prejudice, with all parties to the Receiver Action bearing their own fees and costs.

Additionally, the Receiver agreed to file the instant Motion requesting preliminary approval of the Settlement Agreement and entry of the attached Proposed Preliminary Order. The Proposed Preliminary Order, attached as Exhibit "B", provides, *inter alia*, for preliminary approval of this Settlement Agreement, gives notice to all affected and interested parties, including, without limitation, the Putative Class, and delineates the form, manner, and substance of notices to be provided in advance of final approval of the Settlement Agreement and entry of an Order in the form attached as **Exhibit "E"** ("**Receiver Settlement Order**").

Lastly, the Receiver and Class Plaintiffs agreed to seek approval of the form and content

---

[2] The description of the terms of the Settlement Agreement contained in this Motion is only a summary intended solely for ease of reference. In case of any conflict between the description of the settlement contained in this Motion and the actual language of the Settlement Agreement, the Settlement Agreement shall control.

of the Notice attached hereto as Exhibits "C" and "D" and the manner and method of publication

of such notice with a Court-imposed deadline by which objections to this Settlement Agreement

must be filed with this Court or else be deemed waived.

1.      **Notice to Interested Parties**

As explained in the Settlement Agreement, the proposed settlement releases all claims that

were and could have been asserted against Grant Thornton, the Former Officers and Directors, and

AIG by the Receiver and the Class Plaintiffs, with such settlement expressly conditioned on this

Court approving the Settlement Agreement and including in the order approving such Settlement

Agreement a provision approving of the Receiver Releases (as defined in the Settlement

Agreement), relating to this action, the Receiver Action, or any other claims or potential claims

relating in any way to any of the Receivership Entities, or which arise directly or indirectly from

the activities, omissions, or services, or alleged activities, omissions, or services of Grant Thornton

or the Former Officers and Directors in connection with the Receivership Entities. Despite that the

Receiver Releases are not intended to, and do not inure to the benefit of any third party, the

Receiver submits that he will provide notice of this Motion, the Settlement Agreement, and the

Class Settlement Motion to interested parties, as provided in the Notice, to provide same with the

opportunity to object to the Settlement Agreement, this Motion, or any related matter and be heard

before this Court.

Specifically, within thirty (30) days after entry of the Class Preliminary Approval Order,

the Receiver will cause the Notice (in substantially the same form as attached as Exhibit "C") to

be served by electronic mail and/or US Mail, to all interested parties. The Receiver, upon entry of

the Receiver Settlement Order, and upon the Parties' confirmation with the Court in the Class

Action of an acceptable hearing date, shall also post on the Receiver's website

(www.tcafundreceivership.com) the Notice (in substantially the same form as attached as Exhibit "D"), including the day and time of the Final Approval Hearing to be held before the Court in the Class Action. This information shall be posted on the Receiver's website no later than 30 days before the scheduled hearing.

The Final Approval Hearing is to allow those interested parties objecting to be heard at a date and time set by the Court in the Class Action and to be provided in the Notice (the "**Final Approval Hearing**"). The purposes of the Final Approval Hearing will be to consider final approval of the Settlement Agreement. Any member of the Settlement Class who wishes to be excluded from the Settlement Class must advise the Parties in writing of that intent and the opt-out request must be postmarked no later than the Opt-Out Deadline. Any member of the Settlement Class who does not properly and timely submit an opt-out request will be bound by this Settlement Agreement and the Class Final Approval Order, including the releases contained in this Settlement Agreement. Further, any member of the Settlement Class who objects to the Settlement Agreement, the release by the Settlement Class, or compensation to Class Counsel or the Receiver's counsel must file with the Court in the Class Action a written objection signed by the member of the Settlement Class by the Objection Deadline. Moreover, to the extent a member of the Settlement Class submits an objection or otherwise provides commentary relating to any aspect of this Settlement Agreement, the Parties will ensure that this Court and the Court in the Class Action are provided with copies of all such communications such that they may be considered as part of the approval process.

All objections filed with the Court must contain (i) the name of the Class Action; (ii) the objector's full name, address, email address, and telephone number; (iii) an explanation of the basis upon which the objector claims to be a member of the Settlement Class; (iv) all grounds for

the objection, accompanied by any legal support for the objection; (v) the identity of all counsel who represent the objector, including any former or current counsel who previously represented the objector and may be entitled to compensation for any reason related to the objection to the Settlement or the fee application; (vi) the identity of all counsel representing the objector who will appear at the Final Approval Hearing; (vii) the number of times in which the objector has objected to a class action settlement within the five (5) years preceding the date on which the objector files the objection; (vii) the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five (5) years preceding the date that the objector files the objection, the caption of each case in which the counsel or the firm has made such objections, and a copy of any orders related to or ruling upon counsel's or the firm's prior such objections that were issued by the trial and appellate courts in each listed case; (ix) any and all agreements that relate to the objection or the process of objecting, whether written or verbal, between the objector or objector's counsel and any other person or entity; (x) a list of any persons who will be called to testify at the Final Approval Hearing in support of the objection; (xi) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (xii) the objector's signature on the written objection (an attorney's signature is not sufficient).

Lastly, as set forth in the Settlement Agreement, the Receiver submits that the Notice, attached as Exhibits "C" and "D" hereto, constitutes good and sufficient notice, and is reasonably calculated under the circumstances to notify all interested parties of the Motion, the Settlement Agreement, and the Class Settlement Motion, and of their opportunity to object thereto and attend the Final Approval Hearing concerning these matters. The Notice also furnishes all parties in interest a full and fair opportunity to evaluate the settlement object to the Motion, the Settlement

Agreement, the Class Settlement Motion, and all matters related thereto; and complies with all requirements of applicable law, including, without limitation, the Federal Rules of Civil Procedure, the Court's local rules, and the United States Constitution.

### III.   MEMORANDUM OF LAW

#### A.   The Receiver's Decision and Authority to Enter into the Settlement Agreement is Authorized by the Appointment Order.

In considering whether to approve a settlement brokered by an equity receiver, a district court will examine the parameters of the receivership order's mandate. In *SEC v. Credit Bancorp, Ltd.*, 2001 WL 1658200 at \*2 (S.D.N.Y. Dec. 27, 2001), when faced with a federal equity receiver's motion to approve a settlement with a creditor, the court held that "[i]t is enough that the Receiver's request for settlement falls well within the broad discretion granted to him by the January 2000 Order and the ordinary powers of a receiver." In that case, the January 2000 Order authorized the receiver to "investigate, prosecute, ... compromise and adjust actions in any state, federal or foreign court or proceeding of any kind as may in his sole discretion be advisable to or proper to recover or conserve funds, assets, or property of Credit Bancorp." *Id*. at \*1. The court reasoned that this comports with the ordinary practice of receivers: "[T]he receiver has the power, when so authorized by the court, to compromise claims either for or against the receivership and whether in suit or not in suit." *Credit Bancorp*, 2001 WL 1658200 at \*2 (quoting 3 Ralph Ewing Clark, A Treatise on the Law and Practice of Receivers, § 770 (3d ed. 1959)). Subsequently, in *SEC v. Bancorp, Ltd.*, 2002 WL 1792053 at \*4-\*5 (S.D.N.Y. Aug. 2, 2002), the court approved another receiver settlement with broker-dealers because it was within the receiver's discretion based on the January 2000 Order and the ordinary practice for receivers.

The Appointment Order here empowers the Receiver to "transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of

business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property." [ECF No. 5 at § IX ¶ 31]. The claims against Grant Thornton and the Former Officers and Directors are Receivership Property, as defined in the Appointment Order.[3] *See* [*Id.* at § II ¶ 7(A)]. The Receiver holds the claims at issue on behalf of the Receivership Entities. Thus, the Receiver is authorized to compromise and settle the claims against Grant Thornton and the Former Officers and Directors in the manner he deems most beneficial to the Receivership Estate, with due regard to the realization of the true and proper value of such property. As set forth more fully below, after review of the alleged claims against Grant Thornton and the Former Officers and Directors and weighing the cost of litigation against same, the Receiver and his retained professionals determined that settling the claims against Grant Thornton and the Former Officers and Directors was in the best interest of the Receivership Estate for the ultimate benefit of investors and other stakeholders. Therefore, the Settlement Agreement falls squarely within the Receiver's mandate from this Court. While Court approval is not expressly required by the Appointment Order, the Receiver submits the Settlement Agreement for the Court's review in order to ensure full transparency and notice to the Court, interested parties, and the public. Accordingly, the Court should approve the Settlement Agreement.

  **B.**   <u>**This Court's power to supervise the Receivership is extremely broad and courts have recognized that the Receiver's business judgment is entitled to great judicial deference**</u>.

---

[3] "Receivership Property" or, collectively the "Receivership Estates" is defined as all property interests of the Receivership Entities, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, **claims**, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Entities own, possess, have a beneficial interest in, or control directly or indirectly. *See* [*Id.* at § II ¶ 7(A)] (emphasis added).

Notwithstanding the powers specifically provided to the Receiver in the Appointment Order to enter into the Settlement Agreement, this Court has authority to approve the terms of the Settlement Agreement. The Court's power to supervise an equity receivership and determine the appropriate action to be taken in the administration of the receivership is extremely broad. *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992); *SEC v. Kaleta*, 530 F. App'x 360 (5th Cir. 2013) (stating that "the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership" and affirming approval of settlement in equity receivership commenced in a civil enforcement action). The right of a receiver to settle claims and compromise actions with the approval and sanction of the court is well recognized. *O'Neal v. General Motors Corporation*, 841 F. Supp. 391, 398 (M.D. Fla. 1993). The Court's authority to impose and administer this Receivership is derived from its inherent powers as a court of equity. *Elliott*, 953 F.2d at 1566 (citing *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372 (5th Cir. 1982)).

Moreover, a district court has wide discretion to determine what relief is appropriate regarding settlements in an equity receivership. *See Gordon v. Dadante*, 336 Fed. Appx. 540, 549 (6th Cir. 2009) ("[N]o federal rules prescribe a particular standard for approving settlements in the context of an equity receivership; **instead, a district court has wide discretion to determine what relief is appropriate**.") (emphasis added). This Court may enter such orders as may be appropriate and necessary for a receiver to fulfill his duty to preserve and maintain the property and funds within the receivership estate. *See e.g.*, *Official Comm. Of Unsecured Creditors of Worldcom, Inc. v. SEC*, 467 F.3d 73, 81 (2d Cir. 2006). Specifically, courts appointing a receiver "should see that the business is liquidated as economically and speedily as possible, unless its continuance is demonstrably beneficial to creditors." *Jones v. Village of Proctorville*, 290 F.2d 49, 50 (6th Cir. 1961) (citation omitted).

Notably, the goal of a receiver charged with liquidating assets is to obtain the best value for the receivership estate available under the circumstances. *Fleet Nat'l Bank v. H&D Entertainment, Inc.*, 926 F. Supp. 226, 239-240 (D. Mass. 1996) (citing *Jackson v. Smith*, 254 U.S. 586 (1921)). Courts have recognized that a receiver's business judgment is entitled to **great judicial deference** when selecting the appropriate methods to achieve this goal. *See In re JFD Enter., Inc.*, No. 99-2034, 2000 WL 560189, at *5 (1st Cir. 2000) ("The trustee has ample discretion to administer the estate, including authority to conduct public or private sales of estate property. Courts have much discretion on whether to approve proposed sales, but the trustee's business judgment is subject to great judicial deference.") (internal citations omitted); *see also Golden Pac. Bancorp v. FDIC*, No. 95 Civ 9281(NRB), 2002 WL 31875395, *aff'd sub nom, Golden Pac. Bancorp v. FDIC*, 375 F.3d 196 (2d Cir. 2004) (recognizing receivers are afforded deference in corporate decision making).

The Settlement Agreement is the result of months-long efforts by the Receiver and his retained professionals, including two mediations, to come to settlement terms that are both fair and equitable to the Receivership Estate and interested parties. The Receiver has claims against Grant Thornton and the Former Officers and Directors, and believes those claims to be valid and meritorious, though they are denied by Grant Thornton and the Former Officers and Directors. However, the Receiver is charged by the Court with minimizing the expenses incurred by the Receivership Estate to effectuate a maximum distribution to the investors. The Receiver took these varying mandates into consideration when negotiating and analyzing the Settlement Agreement.

Specifically, the amount to be gained by the Receivership Estate under the Settlement Agreement is $26,499,125. Absent the proposed settlement, the cost of litigation would be conservatively, $500,000, for the Receivership Estate, not including the expenses incurred for

18

defense of the litigation under the pertinent insurance policies, which amounts would then be unavailable to satisfy any potential judgment in favor of the Receiver. Thus, by settling the claims now, the economic impact to the Receivership Estate is substantial and in the Receivership Estate's best interest.

Additionally, in assessing the Settlement Agreement, Receiver analyzed the potential claims he could bring against Grant Thornton and the Former Officers and Directors, the likelihood of success on the merits, the expense of litigation (both to the Receivership Estate for prosecuting those claims and for defending the claims for Grant Thornton and the Former Officers and Directors—expenses which would affect what funds would be available to satisfy any potential judgment in favor of the Receiver), the length of any potential litigation, the risks associated with it, and the personal and entity financials of Grant Thornton, AIG, and the Former Officers and Directors. The Receiver, in his business judgment, has determined that the Settlement Agreement is in the best interest of the Receivership Estate, and respectfully requests that it should be approved.

**C.**     **The Court has wide discretion under the *Justice Oaks* factors to approve the Settlement Agreement.**

In *In re Justice Oaks II, Ltd.*, 898 F.2d 1544 (11th Cir. 1990), *cert. denied* 498 U.S. 959, (1990), the court enunciated certain factors which must be considered in determining whether to approve a proposed settlement in a receivership.[4] These factors include the following:

---

[4] *In re Justice Oaks II* addressed the approval of a settlement in a bankruptcy matter. Because a receivership estate is comparable to the estate administered in a bankruptcy case, courts consider the *Justice Oaks* factors used by the bankruptcy courts, as approved by the Eleventh Circuit, to determine settlement agreements should be approved in receivership cases. *See Sec. & Exch. Comm'n v. Alleca*, No. 1:12-CV-3261-WSD, 2018 WL 2278258, at *3 (N.D. Ga. May 18, 2018) (preliminarily approving settlement and bar order based on the *Justice Oaks* factors, and deferring ruling on the proposed settlement and bar order pending the opportunity for objections as provided in the notice set forth in the settlement agreement).

(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.* Moreover, the district court's powers to fashion relief in an equity receivership include "the court's inherent equitable authority to issue a variety of 'ancillary relief' measures in actions brought by the SEC to enforce the federal securities laws." *Kaleta*, 530 Fed. Appx. at 362 (quoting *S.E.C. v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980)). "Such 'ancillary relief' includes injunctions to stay proceedings by non-parties to the receivership." *Id.* Here, this Court should exercise its inherent equitable authority and preliminarily approve the Settlement Agreement as the terms of the Settlement Agreement satisfy the above *Justice Oaks* factors, as set forth more fully below.

The first factor, the probability of success in the litigation, weighs in favor of approval of the Settlement Agreement when considered with the remaining factors. While the Receiver is confident in the merits of the claims asserted against Grant Thornton and the Former Officers and Directors, there is no certainty in litigation, including on appeal. Under the Settlement Agreement, the claims are being resolved, thereby eliminating the risk and expense of prosecuting the claims and, in turn, will allow the parties and the Court to avoid protracted litigation in which Grant Thornton and the Former Officers and Directors would continue to vigorously defend. The litigation would require several factual determinations that would likely preclude summary judgment and require a trial, including expert testimony, which would increase the cost and expense of the litigation. Thus, the first factor weighs in favor of approving the Settlement Agreement.

The second factor involving the difficulties of collection also weighs in favor of approving

the Settlement Agreement. With defense costs accruing, there is less money available under the AIG Policy and Grant Thornton insurance policies to pay the Receiver if a judgment is ultimately awarded in his favor. Thus, this factor weighs heavily in favor of approval of the Settlement Agreement and in the Receiver's business judgment, the difficulty in collection factor was a critical component supporting the Settlement Agreement, especially in light of the defense costs that continue to accrue.

The third factor, the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it, also weights in favor of approval of the Settlement Agreement. Specifically, the claims against Grant Thornton and the Former Officers and Directors are complex in nature and would likely require a trial on the merits. In view of the foregoing, the complexity of the claims would result in continued litigation and a significant investment in legal and professional fees and costs with no assurances of success or collection.

The last factor as to whether the settlement is in the paramount interest of creditors weighs in favor of approval of the Settlement Agreement. The Receiver believes that the investors and creditors of the Receivership Estate will support the approval of the Motion and the Settlement Agreement. The proposed settlement assures that there will be a payment of over $26.4 million to the Receivership Estate, for the ultimate benefit of defrauded investors when a distribution is made. Therefore, the Receiver believes that the Settlement Agreement is in the best interest of the Receivership Estate and defrauded investors.

Accordingly, the Receiver submits that the Settlement Agreement satisfies the *Justice Oaks* factors and should be approved.

## VI.     <u>CONCLUSION</u>

The proposed relief represents another step in providing a meaningful distribution to the

stakeholders of this estate. The Settlement Agreement, through deliberate and extensive negotiations, ended with a payment of $26,499,125 to the Receiver once certain conditions are met, as set forth in the Settlement Agreement. This significant price was the result of good faith and arm's length negotiations. The proposed Settlement Agreement is well within the sound business judgment of the Receiver. The Motion should be approved.

### S.D. Fla. L.R. 7.1(A)(3) CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for the Receiver conferred with counsel for the SEC on December 16 and 20, 2024 via phone and email, regarding the requested relief and is authorized to represent that the SEC does not oppose the relief sought.

DATED: December 20, 2024.

Respectfully submitted,

Jonathan E. Perlman, Esq.
Florida Bar No. 773328
jperlman@venable.com
*Receiver for the Receivership Entities*

-and-

VENABLE LLP
*Attorneys for Jonathan E. Perlman, Receiver*
100 Southeast 2nd Street, Suite 4400
Miami, Florida 33131

By:   /s/Gregory M. Garno
      Gregory M. Garno, Esq., FBN 87505
      ggarno@venable.com
      Patrick T. Kalbac, Esq., FBN 1011649
      ptkalbac@venable.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of

the Court using CM/ECF. I also certify that the foregoing document is being served on all counsel

of record identified on the attached Service List via transmission of Notices of Electronic Filing

generated by CM/ECF and all affected and interested parties, including but not limited to the JOLs,

the Alleged Class, Thomas Day, Michael Attar, and Nori Feder, pursuant to the Notice on this 20th

day of December, 2024.


                                   /s/ Gregory M. Garno

                                       Attorney